STATE ex rel. WESTLAKE et al., Relators, v. DISTRICT COURT of FIRST JUDICIAL DISTRICT in and for LEWIS and CLARK COUNTY et al., Respondents.

No. 8681

Submitted July 29, 1946. Decided November 1, 1946.

173 Pac. (2d) 896

Mr. Edmond G. Toomey, of Helena, and Mr. Claude C. Gray, of Big Timber, for relators.

Mr. Arthur P. Acher and Mr. Stanley Foot, both of Helena, for respondents.

MR. JUSTICE MORRIS delivered the opinion of the court.

Petition for writ of supervisory control.

This controversy was before us in case No. 8655, 167 Pac. (2d) 588, 591, and reference is hereby made .to that case for the scope of the pleadings and proceedings as presented and determined at that time.

In some of the pleadings and briefs the plaintiff is referred to as the respondent and in others the intervenors are referred to as relators. In order to avoid confusion the parties will be referred to in this opinion as the plaintiff, the defendants and the intervenors.

In the original case, O. L. Brackman of Helena, Montana, a retail grocer and dealer in other related food products, commenced an action in the district court of the first judicial district against the commissioner of agriculture of the state of Montana and others, alleging, among other things, that sections 2620.45 and 2620.46 of the Political Code, Rev. Codes 1935, providing for a license tax on oleomargarine, are in violation of certain constitutional provisions. The attorney general of Montana answered for and on behalf of the commissioner of agriculture and the other state officials named as defendants. Intervenors, who are dairymen and butter makers, and whose products are in competition with oleomargarine, filed their petition for leave to intervene, alleging certain facts in support of their contentions to the effect that their rights were jeopardized by certain admissions made by the attorney general in his answer to the Brackman complaint and that relators' property rights would not be adequately protected unless they were permitted to be heard in their own behalf. Thereupon the trial judge made and entered an order granting relators' petition to intervene and their complaint in intervention was duly filed. The plaintiff moved to strike the complaint in intervention and after argument the motion was granted and the intervenors came to this court seeking a writ of supervisory control. That action we have referred to above as cause No. 8655. By our decision in that case the lower court was directed ''to annul the order striking the relators' com-

plaint and answer in intervention.'' That order having been complied with, the intervenors filed an amended complaint and answer on May 11, 1946. On June 5th the plaintiff filed a combined general and special demurrer to the intervenors' complaint and answer. Paragraphs V and VI of such demurrer set out the grounds upon which the complaint in intervention was attacked in these words:

''V. That said amended complaint in intervention and accompanying answer failed to set forth facts sufficient to show such an interest of the plaintiff in intervention in the matter of litigation, in the success of either of the parties, or an interest against both, as contemplated and required under the provisions of Section 9088, R. C. M. 1935, to warrant intervention.

''VI. That the interest of the plaintiffs in intervention, if any, are already represented in said litigation, and the amended complaint in intervention, and the amended answer in intervention fail to set forth any facts showing that counsel for the defendants have been guilty of any fraud or collusion so that the interests represented by the defendants are not properly represented.''

On June 17, 1946, the court sustained the demurrer. In the order sustaining the demurrer, the court said: ''The Court is of the opinion that the demurrer is well taken. Section 9088 R. C. M. 1935, which authorizes intervention, was borrowed from California, after the highest court of that State had placed its construction upon the corresponding provision, and it must be presumed that the interpretation theretofore placed upon it in California was also adopted. Moreland v. Monarch Mining & Mill. Co., 55 Mont. 419, 178, Pac. 175.

''The Supreme Court of California declared in the early case of Horn v. Volcano Water Co., 1859, 13 Cal. 62, 73 Am. Dec. 569, that the interest which entitles a person to intervene in a suit between other parties must be direct and immediate in character, and not consequential. Also see Elliott v. Superior Court, 168 Cal. 727, 145 Pac. 101, 105; La Mesa Lemon Grove

& Spring Valley Irr. Dist. v. Halley, 195 Cal. 739, 235 Pac. 999, 1000; Drumhiller v. Wright, 64 Cal. App. 498, 222 Pac. 166, 167; City of Alhambra v. Jacob Bean Realty Co., 138 Cal. App. 251, 31 Pac. (2d) 1052.

"Idaho and Utah likewise adopted this provision from California, and follow the same rule. People ex rel. Glidden v. Green, 1 Idaho 235, 240; Utah Power & Light Co. v. Ogden, 95 Utah 161, 79 Pac. (2d) 61.

"However, it would not seem necessary to go beyond the decision of our own Supreme Court. The Court is of the opinion that State Bank of Outlook v. Sheridan County, 72 Mont. 1, 230 Pac. 1097, is controlling, requires that the demurrer be sustained, and precludes intervention in a case such as at bar until the Supreme Court sees fit to modify the scope and effect of that decision.

"In the absence of any allegations of fraud or collusion between plaintiffs and defendants it appears that the interests of the plaintiffs in intervention are already adequately represented."

On July 11, 1946, the intervenors came back to this court and filed a petition praying for an order requiring the district court to show cause why its order of June 17th should not be annulled and set aside and its order of January 28, 1946, permitting intervenors to be heard in the action be reinstated and the cause proceeded with in accordance with section 9088, supra, on the merits. The writ was issued as prayed for and the matter was set for hearing and heard on July 17.

At the outset we deem it advisable to set out the contentions of the parties as such contentions are gathered from the pleadings and arguments. The plaintiff's expressed purpose is to have sections 2620.45 and 2620.46 of Chapter 240 of the Political Code declared unconstitutional on the ground that it is confiscatory and in violation of amendment 14 of the Constitution of the United States in that it deprives plaintiff and others similarly situated of property without due process of law and denies them the equal protection of the laws; that it violates

sections 3 and 27 of Article III of the Constitution of Montana, in that it denies the plaintiff and others similarly situated the right to carry on a lawful business without due process of law; that it violates sections 1 and 11 of Article XII of the Constitution of Montana, in that it assesses a tax which results in unreasonable and arbitrary discrimination and that it violates Article XII of the Constitution of Montana in that it levies a tax for a private purpose by prohibiting in large part the sale of oleomargarine and that such act is for the purpose of aiding the dairy business of the state. In paragraph X of the complaint it is alleged that the sections of the statute mentioned above were passed in the exercise of the police power of the state; that the license fee is prohibitive and is not necessary for the protection of the public health, morals, safety or welfare of the people of the state.

The defendants, by paragraph VI of their answer, deny that the statutes mentioned above were passed in the exercise of the police power of the state. At this point we think it well to say that the only part that the defendants have taken in this controversy was to file their answer. No brief has been filed by the defendants and they were not represented in this court in any of the arguments. The intervenors allege, and we think the facts sustain their allegation, that no objection has been made by the defendants to the petition of the intervenors to be heard in the proceeding in their own behalf. Their answer was filed in the original proceeding on September 27, 1945, and they have taken no part so far as this court is advised since their answer was filed more than a year ago.

While it is necessary to touch upon other questions, particularly the constitutional questions involved, the sole question we are required to determine in this proceeding is as to whether or not the intervenors are entitled to come in as parties, file their answer and be heard in their own behalf. Section 9088, Revised Codes, provides: "Any person may, before the trial, intervene in an action or proceeding who has an interest in the matter in litigation, in the success of either

of the parties, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties to the action or proceeding who have not appeared, and upon the attorneys of the parties who have appeared, who may answer or demur to it as if it were an original complaint.''

The section has been under consideration by this court in a number of cases and review of such cases we think will illuminate the controversy to some extent. The section was under consideration in the case of Equity Co-operative Association of Roy, Mont., v. Equity Co-Op. Milling Co., 63 Mont. 26, 37, 206 Pac. 349, 352, wherein it was said: * * * it appears to us that the trial court was in error in not allowing the filing of the complaint in intervention. The statute is plain * * * and, after intervenors made prima facie showing of interest in the subject of litigation, they should have been allowed to intervene.''

In the case of State ex rel. Thelen v. District Court, 93 Mont. 149, 157, 17 Pac. (2d) 57, 59, it was said: ''Prompted by a desire to do no injustice, and to render complete justice, courts allow the right of intervention in an equity case with liberality, when the petitioner's rights will be directly affected by the decree. [Citing] 21 C. J. 341.''

In the case of Foster v. Coyle, 59 Mont. 444, 197 Pac. 747, 749, this court, speaking through Mr. Chief Justice Brantly, said: ''The statute is broad enough in terms to permit intervention in any case, provided only the person seeking to intervene can show either an interest in the subject-matter of the action, *or an interest in the success of either of the parties,* or an interest in the subject-matter against both.''

In the case of State Bank of Outlook v. Sheridan County, 72

Mont. 1, 230 Pac. 1097, 1098, cited by the learned trial judge in sustaining the demurrer to the intervenor's petition in this action, the trial court permitted a tax payer to intervene and denied the plaintiff's motion to strike the intervenor's complaint. On appeal, the lower court was reversed as to that ruling and the cause remanded with directions to strike the complaint in intervention and proceed with the trial of the cause. Mr. Justice Holloway, speaking for the court in that case, after quoting section 9088, said: ''The purpose of the statute is to avoid circuity of action and needless multiplicity of suits (Moreland v. Monarch Mining & Mill. Co., 55 Mont. 419, 178 Pac. 175), but it is not its purpose to admit mere intermeddlers into litigation being conducted by other parties. * * *

''Matkin does not seek to join the plaintiff in claiming what is sought by the complaint; neither does he demand relief adverse to both plaintiff and defendant. He does, however, ask to make a partial defense to plaintiff's cause of action, different from that made by the county attorney, and solely on the ground that he is a taxpayer, * * *.

''A taxpayer, as such, does not represent the county, and is not authorized to speak for it. Section 4819, Revised Codes, declares: 'The county attorney is the public prosecutor, and must * * * defend all suits brought against * * * his county.' When the county attorney appeared and filed an answer, the presumption at once arose that he regularly performed his official duty. Section 10606. While he is prohibited from advocating claims against his county, except for his own services (section 4822), and is required to oppose all such claims 'which are unjust or illegal' (section 4820), he is not required to oppose just or legal claims merely because they are presented against the county which he represents. It cannot be charged that the county attorney either failed or refused to act, for he did act, and the mere fact that he did not oppose the plaintiff's claim in toto does not raise any presumption of bad faith or corrupt practice on his part.

"If one taxpayer, merely by virtue of the fact that he is such, may intervene in this action, every other taxpayer may do so; and, if intervention is permitted upon the showing here made, a taxpayer may intervene in every action prosecuted against a county, even though the proper representative of the county has interposed a complete defense.

"While a county is a civil division of a state, it is also a corporation (section 4441, Rev. Codes), and the same general rule which denies to a stockholder the right to maintain or defend an action on behalf of a private corporation until he has exhausted his remedy within the corporation itself (Allen v. Montana Refining Co., 71 Mont. 105, 227 Pac. 582), likewise denies to a taxpayer the right to appear or defend on behalf of his county, unless and until he has made it appear that the legal representative of the county has failed or refused to act or is acting in violation of the law. Hedges v. Dam, 72 Cal. 520, 14 Pac. 133. This is the theory upon which taxpayers' suits have been sustained in this court and other courts; and upon the same principle, to warrant intervention by a taxpayer in a pending action against a county, it must be made to appear that the county attorney has failed or refused to represent the county, or is acting in collusion with the plaintiff, or otherwise is guilty of a breach of trust to the damage of the county and its taxpayers. Cornell College v. Iowa County, 32 Iowa 520; Greeley v. Lyon County, 40 Iowa 72; State ex rel. Skogstad v. Anderson, 130 Wis. 227, 109 N. W. 981; 15 C. J. 644.

"In the absence of any suggestion of negligence or wrongdoing on the part of the county attorney, the complaint in intervention fails to state facts sufficient to warrant intervention."

In the case of Burgess et al. v. Hooks, 103 Mont. 245, 257, 62 Pac. (2d) 228, 232, after reciting section 9088, the court said: "The purpose of this section is to avoid circuity of action and multiplicity of suits, if intervener's interest be such that he would be prejudicially affected as a necessary conse-

quence of the determination of the action without his presence as a party to it, [he may intervene]."

In the case of Smith v. Armstrong, 166 Pac. (2d) 793, 795, this court reviewed what had been said in a number of Montana cases relating to section 9088, supra, and repeated what former courts had said as follows: "Intervention is permissible *in any case* where the person asking to intervene can show either an interest in the subject matter of the action, or an interest in the success of either of the parties."

The next preceding sentence has been repeated in a number of decisions by this court and it is significant that the phrase used by the trial court and repeated in a number of decisions in other jurisdictions, has never been adopted in any decision by this Court in construing section 9088. We think that to add to the section the phrase, "The interest which entitles a person to intervene in a suit between other parties must be direct and immediate in character, and not consequential," is not warranted by any words contained in the section. The phrase as quoted above is taken from the order of the court sustaining plaintiff's demurrer to the intervenors' complaint and answer and is cited in such order as taken from the early California case of Horn v. Volcano Water Co., 1859, 13 Cal. 62, 73 Am. Dec. 569, construing a section of that state from which our section 9088 was adopted and is cited as authority for the phrase.

The syllabus of the Horn case, supra, supports the use of the phrase in question in that case but the body of the decision does not. Syllabi may lay down no rule not in complete accord with the opinion itself. The opinion in the Horn case was written by the distinguished jurist, Stephen J. Field, then an associate justice of the Supreme Court of California and later an associate justice of the Supreme Court of the United States. In that case Justice Field, after quoting the first sentence of the California statute from which our section 9088 was adopted, said at page 64 of the opinion in 13 Cal.: "What is 'an interest,' within the meaning of this statute, is

not clear." Farther along in the opinion the justice cites the case of Gasquet v. Johnson, 1 La. 425, in which case the Louisiana court had under consideration the same word in a similar statute of that state. We quote from the Horn case the following: "In regard to the *interest* entitling a person to intervene in an action, the [Louisiana] Court said: 'This we suppose must be a direct interest by which the intervening party is to obtain an immediate gain, or suffer loss by the judgment which may be rendered between the original parties.' " Note the use of the word "suppose". This is the substance of all that was said in the Horn case by Mr. Justice Field that is similar in meaning to the pharse under consideration. Yet what we have quoted above appears to be the only foundation for the phrase which the intervenors complain has been added under the guise of construction to section 9088. It does not appear that Mr. Justice Field had any notion of laying down a rule of law in quoting from the Louisiana case as indicated above. It seems to us that such quotation by the justice was merely in the nature of a passing comment, but in subsequent California cases (Elliott v. Superior Court, 168 Cal. 727. 734, 145 Pac. 101, 105; La Mesa Lemon Grove and Spring Valley Irr. District v. Halley, 195 Cal. 739, 235 Pac. 999; Drumhiller v. Wright, 64 Cal. App. 498, 222 Pac. 166), the phrase was cited as though it were a recognized rule of law in that jurisdiction and was expressly declared to be such in the case of Drumhiller v. Wright, supra.

The intervenors say in subdivisions (a) and (b) of paragraph X of their petition that "(a) The respondent Court and Judge assumed to add to the conditions for intervention stated in Section 9088, R. C. M. 1935, qualifications not expressed by the Legislative Assembly, i. e., the right of a trial judge to strike down a conceded interest because such interest does not meet a degree of directness and immediacy satisfying his individual views, as distinguished from the statutory requirements.

"(b) The order, while (1) inferentially admitting that relators have an interest in the litigation and (2) stating that

said interest is represented by the original defendants, denies relators the right to present their stated and judicially admitted interest by gratuitously characterizing the same as not 'direct and immediate.' "

It appears to us that the complaint of the intervenors on this point is clearly justified. The only essentials necessary to the right to intervene are set out in the first sentence of section 9088 as quoted supra, and that right is modified only by certain rules of procedure and the necessity of obtaining "leave of the court" to become a party to an action by intervention. It will be noted that section 9088 provides that one may intervene when any one of three conditions exists: 1. When the person seeking to intervene has an interest in the matter in litigation. 2. When he is interested in the success of either party. And 3. When he has an interest against both. We think the intervenors in this case are entitled to intervene under any one or all of the three conditions mentioned, and particularly are they interested in the success of the defendants in upholding the constitutionality of sections 2620.45 and 2620.46 of the Political Code.

In the several cases by this court which we have heretofore cited, nothing is said about the necessity of a person seeking to intervene having an interest which "must be direct and immediate in character, and not consequential." We see no sound reason for intruding such provisions and conditions into a clear and explicit statute such as section 9088 and we think such intrusion is a clear violation of two firmly established rules of statutory construction which maintain in this jurisdiction. First, it was said in the case of Equity Co-operative Association of Roy, Mont., v. Equity Co-Op. Milling Co., supra, that "the statute [sec. 9088] is plain" and that fact is as clear as the English language can make it and the rule has been in effect in this jurisdiction for more than 60 years that "Whenever the language of a statute is plain, simple, direct, and unambiguous, it does not require construction but

234

it construes itself." Cruse et al. v. Fischl, 55 Mont. 258, 265, 175 Pac. 878, 880, and many other decisions to the same effect.

Second, section 10519, Revised Codes, provides: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." See also Conley et al. v. Johnson et al., 101 Mont. 376, 54 Pac. (2d) 585. True it has been said that when we adopt a statute from another state the construction placed upon such statute by the highest court of the state from whence it came is adopted along with the statute. Moreland v. Monarch Min. Co., 55 Mont. 419, 178 Pac. 175. But the same Justice who wrote the opinion in that case said in the case of Ancient Order of Hibernians et al. v. Sparrow et al., 29 Mont. 132, 74 Pac. 197, 198, 64 L. R. A. 128, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, after citing the rule followed in the Moreland case, that "However, this court will not blindly follow the construction given a particular statute by the court of a state from which we borrowed it, when the decision does not appeal to us as founded on right reasoning." This last mentioned case was followed in Deer Lodge County v. United States Fidelity & Guaranty Co., 42 Mont. 315, 112 Pac. 1060, Ann. Cas. 1912A, 1010; State ex. rel. Goodman v. Stewart, 57 Mont. 144, 187 Pac. 641; State ex rel. Wallace v. Callow, 78 Mont. 308, 254 Pac. 187; In re Strode's Estate, Mont., 167 Pac. (2d) 579. This court has no power to add new matter to a statute under the guise of construction. Section 9088, Revised Codes, as it appears in our Codes is plain, clear and specific and the part intruded therein relative to the necessity of a party having a "direct and immediate" interest in the matter would be an unwarranted invasion of a specific legislative function.

On the question of the necessity of obtaining leave of court before a complaint in intervention may be filed, we

are inclined to the view that the learned trial judge misapprehended the purpose of that clause of the statute. It was said in the Sheridan County case, supra, that, "The purpose of the statute is to avoid circuity of action and needless multiplicity of suits (Moreland v. Monarch Min. & Mill. Co., 55 Mont. 419, 178 Pac. 175), but it is not its purpose to admit mere intermeddlers into litigation being conducted by other parties." This purpose of the statutes has been repeated in other decisions of this Court. We justify the repetition of this part of that opinion in order to emphasize what we are about to say: The purpose then is to shut out meddlers and avoid multiplicity of suits. The order of the lower court sustaining the demurrer to the intervenors' complaint was not based upon such grounds but upon rules laid down in other jurisdictions and such rules we think, for the reasons heretofore stated, if followed here, would be in derogation of the plain meaning of our statute. We think the provision in section 9088, requiring leave of court, has for its principal, and possibly its only purpose, the protection of the trial court. Meddlers, if allowed to intervene, would needlessly add to the labor and burdens of the court. Multiplicity of unrestricted suits would have the same result. By providing for "the leave of court" the trial judge is left to determine in his discretion as to what measure of latitude he shall allow one who seeks to intervene, keeping in mind at all times the purpose to do justice to one who applies in good faith, and when the trial court is in doubt we think the applicant should be given the benefit of such doubt. So much for our view as to the meaning of section 9088 and its purpose, but it should be kept in mind that the section specifies three separate grounds on which one may be entitled to intervene and any one of the three found to exist is sufficient to justify the court in granting the request.

We think it would be an unwarranted assertion to say the intervenors, and many others, are not interested in upholding the validity of sections 2620.45 and 2620.46 of Chapter 240 of the Political Code.

Adverting to the case of State Bank of Outlook v. Sheridan County, supra, as authority in support of the trial court's reason for striking intervenors' complaint, we think there is a marked difference between the interest a mere taxpayer has in litigation between a county and one claiming a debt due from the county and a group of dairymen, creamery operators and others, who desire to be heard in a court action in opposition to the contentions of competitors who seek to have a legislative Act, obviously enacted in the interest of the dairy business, declared to be unconstitutional and void. We are not here concerned with the validity of the Act which the plaintiff seeks to have removed from the statute books. That question cannot be determined in this action. What we are now concerned with is the right of parties who believe their occupations and business are threatened with serious impairment, and who seek the court's permission to be heard in defense of their property rights. This Court in the Sheridan County case, supra, characterized in effect the taxpayer who sought to intervene in that case a ''mere intermeddler.'' There is no justification for so characterizing the intervenors here. It is obvious from the contents of section 195 .of 47 C. J. 100, that there is marked variations in the application of statutes relative to intervention and no well settled rule is established as to when one should be permitted to intervene and when he should be denied. It is said by that text writer that, ''Under some statutes any person may intervene who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both. Other statutes provide for intervention where one claims an interest in the litigation. Others permit intervention where applicant has an interest or title which the judgment will affect. Still others provide that a person may intervene if he has an interest in the subject of the action, in real property, the title to which may be affected by the judgment, or in real property for injury to which the complaint demands relief. Some statutory provisions which do not define specifically the interest required have been con-

strued as requiring an interest in the subject matter of the suit which may be adversely affected. An 'interest in the controversy,' as used in a statute, has been construed as meaning an interest in the subject of the action, that is, the subject matter of the litigation. As used in certain statutes the phrase 'interested in the subject-matter' refers only to a case in which applicant shows an interest in property sued for. In some jurisdictions the view has been taken that, while a person may intervene who has an interest in the controversy, he cannot intervene when he merely claims an interest in the thing which is the subject of the controversy. While in some cases a view more favorable to the right to intervene has been taken, the rule frequently stated is that the right or interest which will authorize a third person to intervene must be of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation of the judgment. So it has been stated specifically or in substance that the interest is not sufficient if it is indirect and contingent, indirect and remote, indirect, remote and conjectural, consequential, or collateral. The word 'interest,' as used in an intervention statute, means more than mere concern. Where the direct and immediate interest referred to above is shown, intervention is proper provided the other elements of the right or privilege exist. The intervener's interest has been regarded as sufficient under certain code provisions where the facts on which he relies would constitute a good defense if the action had first been brought against him. The interest must be one as to which a determination may properly be made in the proceeding in which the intervention is sought. * * *

"In determining what interest is sufficient, the applicable statute should be liberally construed in favor of applicant, but such a statute must be substantially followed, and the applicant for intervention must bring himself within its provisions."

There is no sound reason for the suggestion that, to permit the intervenors to be heard in their own behalf reflects upon

the attorney general and his staff. That official has made no objection to the intervenors appearing in the action as parties thereto. It is a well known fact that such public officials welcome the assistance of others in actions of more than passing importance, particularly where the action is of general interest.

Taking up the right of an intervenor being permitted to be heard in questions usually attended to by a public prosecutor, it has been suggested, and vigorously contended for, that the rule laid down in 1 Bancroft, Code Pleading, 862, section 592, should be applied here. The rule is stated thus: ''But when public officers are engaged in litigation to protect public rights, and their pleadings and procedure maintain the public interest, no private person is entitled to intervene.'' Note the word ''entitled'' is used. The clause is not in the positive form. The text does not use the positive phrase such as ''no private person shall be permitted to intervene.'' Neither can it be said that section 9088 is a positive statutory denial of the right to intervene as the right is expressly given, but with the condition that ''leave of court'' shall first be obtained. A right bestowed to be exercised at the discretion of the court is not a right denied as contended for under the Bancroft rule, supra.

It is contended in plaintiff's brief filed July 29, 1946, at the time of the hearing herein, that this issue was raised by the demurrer to the intervenors' complaint and answer in intervention. The contention is not in our opinion, well founded. The most that could be said in support of that contention is that such issue was raised by implication by what was said by the court relative to the Sheridan County case, supra. But issues are not properly raised by implication, but by clear and positive allegations in accord with the following decisions:

''Good pleading and fair practice demand the enforcement of the rule that the pleader must state the facts upon which he bases his action, and be confined to them in making [his] proof.'' Welch v. All Persons, 78 Mont. 370, 254 Pac. 179, 183.

''Cases are tried in court upon the issues joined by the parties. (Citing cases.) They are not to be decided upon an

issue outside of pleadings." Barber v. Chase, 101 Vt. 343, 143 A. 302, 304.

"It is likewise a well-recognized rule of law that the issues in a cause are made and raised alone by the pleadings." Kleinlein v. Foskin, 321 Mo. 887, 13 S. W. (2d) 648, 654. "Pleadings should be so framed as to form definite and specific issues." State ex rel. Tate v. Sevier, 334 Mo. 771, 68 S. W. (2d) 50, 52.

"We have repeatedly held that, under our system of pleading and practice under the Code, issues to be tried must be formed by pleadings and a judgment rendered thereon must respond to the issues raised by the pleadings." Bowman v. Cobb et al., 128 Neb. 289, 258 N. W. 535, 537.

"* * * proof without pleading is just as unavailing as pleading without proof." Louisville & N. R. Co. v. Whitaker, 222 Ky. 302, 300 S. W. 912, 913.

The rule is universally applied.

The only issues raised by the plaintiff as between him and the intervenors was by his demurrer filed June 5, 1946, to intervenors' amended complaint, and answer filed May 11, 1946. By paragraph V of such demurrer it is alleged that such amended complaint and answer "failed to set forth facts sufficient to show such an interest of the plaintiff in intervention in the matter of litigation, in the success of either of the parties, or an interest against both, as contemplated and required under the provisions of section 9088, R. C. M. 1935, to warrant intervention." By paragraph VI of the demurrer it is alleged in effect that the interests of the intervenors are already represented in the litigation and that the answer fails to set forth any facts as to counsel for defendants being guilty of any impropriety or neglect in representing the interest of the intervenors. It is argued that "the right of a third person to intervene has been considered by this court both by review of an order on motion to strike and by review of an order on a general demurrer to the complaint in intervention." Under the decisions relative to the raising of issues from which we

have quoted many pertinent excerpts, issues are not raised in the manner here contended for, and we think an analysis of section 9088, supra, and the authorities cited relative thereto fully cover the issue of the right of a third person to intervene in such an action as this.

There is a further important reason why the intervenors' ▮▮▮ petition should be granted: The plaintiff contends that sections 2620.45 and 2620.46 were enacted in the exercise of the police power of the state, while the defendants deny in paragraph X of their answer that such sections were so enacted. We think it must be presumed that such sections were either enacted pursuant to the police power, or as a purely revenue measure. Johnson v. City of Great Falls, 38 Mont. 369, 99 Pac. 1059, 16 Ann. Cas. 974. If the latter be conceded and the denial that the statutes were enacted in the exercise of the police power remains of record, a serious constitutional question may arise by reason thereof, and the defendants, having denied the statutes involved were enacted in the exercise of the police power of the state, would not be in a favorable position to defend their constitutionality. See City of Bozeman v. Nelson, 73 Mont. 147, 237 Pac. 528; and Reilly v. Hatheway, 46 Mont. 1, 125 Pac. 417.

Let the writ issue.

Mr. Chief Justice Lindquist and Associate Justice Cheadle concur.

Mr. Justice Angstman.

I dissent.

I do not believe petitioners for intervention have a sufficient interest in the action commenced by plaintiff to entitle them to intervene as parties. If they have the right to do so, then every citizen in the state of Montana has the same right.

Petitioners for intervention base their right to intervene upon the ground that they wish to submit evidence to the effect that oleomargarine is not a wholesome, nutritious and healthful food, and this point the attorney general will not advocate.

I think this is not a relevant subject of inquiry at the trial of the case. The only question sought to be raised by plaintiff is that of the constitutionality of the Act imposing a tax upon those who sell oleomargarine.

The legislature regarded oleomargarine as wholesome, healthful and nutritious or it would have prohibited, rather than licensed its sale.

Evidence on the point of its nutritious quality will not be helpful in the trial of the case and will not aid in solving the problem of legislative purpose and intent in passing the statute or of the power to enact it. I think the district court was right in sustaining the demurrer to the complaint in intervention and that its action in so doing should be upheld. I would, of course, welcome argument of counsel for petitioners for intervention as amicus curiae when and if the case reaches this court on its merits, but I do not believe they have the right to intervene as parties and canvass the issue of the nutritious quality of oleomargarine—the legislature having considered it as nutritious and healthful, and having licensed and encouraged its sale for human consumption.

I think the cases relied upon by the district court, by fair analogy, support the court's ruling.

Mr. Justice Adair (dissenting).

This case has its political as well as its legal aspects.

The political question involved should be reserved for action by the legislative assembly rather than for the consideration of an appellate court, in an original proceeding.

The questions of law here presented should be carefully reviewed and determined by the court entirely uninfluenced by the political considerations so boldly manifest.

O. L. Brackman, an individual, owns and operates two retail grocery stores in the city of Helena, Montana. By virtue of store licenses duly and regularly issued by the Montana State Board of Equalization, licenses issued by the Montana State Board of Health, and licenses issued by the Montana State Board of Food Distributors, Brackman is authorized to sell at

retail groceries, meats, dairy products and food products generally. He is desirous of selling oleomargarine in his stores. To do this he must first secure a license from the department of agriculture, labor and industry of the state of Montana at an expense of $800 per annum for the two stores, under the penalty of being guilty of a misdemeanor punishable by a fine of not less than $100 and not more than $500 or by imprisonment in the county jail for not less than 30 days nor more than six months or by both such fine and imprisonment. Sec. 2620.45 and 2620.46.

Brackman contends that the individual rights guaranteed by the Constitution of Montana are injuriously affected and denied to him by sections 2620.45 and 2620.46, Revised Codes, by reason whereof such statutes are invalid.

The uniform declaratory judgments act, Chapter 90, sec. 9835.1 et seq., Code of Civil Procedure, 1935, provides that any person ''whose rights, * * * are affected by a statute, * * * may have determined any question of construction or validity arising under the * * * statute, * * * and obtain a declaration of rights, * * * thereunder.'' Sec. 9835.2, Rev. Codes.

Section 9835.11, Revised Codes, provides: ''When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings. In any proceeding * * * if the statute, * * * is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard.''

On July 2, 1945, the plaintiff, O. L. Brackman, proceeding under the above uniform declaratory judgments act commenced in the district court of Lewis and Clark County cause of action No. 19801 entitled: ''O. L. Brackman, Plaintiff, v. Albert H. Kruse, Commissioner of Agriculture of the State of Montana, and Thomas E. McMasters, Dairy Commissioner, Defendant.''

The single purpose of the action was to have determined

and declared the constitutionality of sections 2620.45 and 2620.46, Revised Codes, supra.

The plaintiff Brackman's complaint alleges: That plaintiff is a citizen and resident of Lewis and Clark County, Montana, a taxpayer within the State of Montana, owning and operating two retail stores in Helena, and licensed to sell therein at retail, groceries, meats, dairy products and food products generally; that the manufacture and sale of oleomargarine in interstate commerce is under the regulation of the Internal Revenue Department of the United States and its labeling and packaging is subject to the regulations of the pure food and drug acts of the United States; that no oleomargarine is manufatcured within the state of Montana, all oleomargarine sold within this state being shipped from other states to the state of Montana in interstate commerce; that the defendants are the administrative officers authorized by law to administer and enforce the law of this state providing for the regulation of the production and sale of dairy products including sections 2620.43 to 2620.46, inclusive; that oleomargarine is a nutritious, wholesome, healthful food containing no deleterious or unhealthful ingredients; that there are approximately 1200 food stores within the state of Montana engaged in the sale of groceries and dairy products, including butter and food products generally; that the provisions of section 2620.45 require a license fee to be paid by retail dealers in oleomargarine; and that unless restrained by the court, the defendants will continue to enforce the provisons of section 2620.45 and require the plaintiff to pay the license fee required under the terms of said act before selling oleomargarine. Defendants' answer admits the foregoing allegations of the complaint.

Plaintiff's complaint further alleges: That oleomargarine is not in all respects a substitute for butter; that it is sold upon its own merits and under such circumstances that every purchaser and every user is fully advised that he is purchasing or using oleomargarine and not butter; that the licenses provided for in section 2620.45, Revised Codes, were designed to

discourage the sale of oleomargarine in aid of the dairy industry; that the cost of oleomargarine at wholesale and retail sale price in Montana have constantly for many years last past been and now are maintained at levels so that the gross profit to a retail seller thereof was and is approximately four cents (4c) per pound; that the license fee required by section 2620.45, Rev. Codes, is so excessive and unreasonable in amount as to prohibit from selling oleomargarine more than 92% of the grocery stores in Montana, including those operated by the plaintiff, said license fees so required being so high as to be prohibitive of a useful and general occupation and purpose; that a great demand exists at the present time in the retail trade for oleomargarine; that by reason of the prohibitive and confiscatory license fee required by the provisions of 2620.45, plaintiff, and the overwhelming majority of other retail dealers similarly situated, are denied the right to sell this food product; that since the enactment of said statute the majority of retail dealers procuring licenses to sell oleomargarine at retail to the consuming public have failed to sell sufficient quantity thereof to reimburse them for the cost of the license; that accordingly licenses have only been obtained by large retail operators and chain store operators, who have been willing to sell the licensed product at a loss, but nevertheless have maintained such article for sale as an attraction to induce customers to patronize their stores or rely upon the fact that the license fee required by the statute was so high that it would give them a monopoly on the sale of this food product and thus enable them to sell a sufficient quantity to reimburse them for the cost of the licenses; that the plaintiff, and other retail dealers similarly situated, of necessity, are not in a position to fairly compete with the owners of licenses to sell the product as they are unable to have on hand for sale this food product, now greatly in demand by the consuming public; that while sections 2620.43 to 2620.46, inclusive, were passed in the exercise of the public power, the excessive, confiscatory and prohibitive license fee provided for in the statute in effect prohibits the

carrying on of a legitimate, profitable industry, and the sale of a healthful, nutritious food, although such prohibition is not necessary for the protection of the public health, morals, safety or welfare; that said statutes deny to plaintiff the equal protection of the law in creating a monopoly for the benefit of a few engaged in the sale of food products at retail who otherwise than for their ability to afford to sell the product at a loss, in expectation of additional sales of other products to consumers compelled to patronize their stores for this product, are engaged in a business identical with that of palintiff; that section 2620.45 deprives plaintiff and others similarly situated of liberty and property without due process of law and denies to them the equal protection of the laws in violation of the provisions of the 14th Amendment to the Constitution of the United States; that said statute denies to plaintiff and others similarly situated the right to carry on a lawful business without due process of law in violation of sections 3 and 27 of Article III of the Constitution of Montana; that the statute assesses a tax which results in unreasonable and arbitrary discrimination in violation of sections 1 and 11 of Article XII of the Constitution of Montana; that the statute levies a tax not for a public or government purpose, but upon the contrary for a private purpose, that is to say, for the purpose of prohibiting in large part the sale of oleomargarine in Montana in aid of the dairy industry in violation of Article XII of the Constitution of Montana, and that plaintiff has no plain, speedy or adequate remedy in the ordinary course of the law. These allegations are denied in defendants' answer.

Section 9067, Revised Codes, requires that every action must be prosecuted in the name of the real party in interest. Section 9078 contemplates that any person who is a necessary party to the complete determination of the question involved in the suit shall be made a defendant therein.

The one necessary and indispensable party defendant for the complete determination of plaintiff's suit and controversy is the Commissioner of Agriculture. Without naming the

Commissioner of Agriculture as a party defendant it would not be possible for the plaintiff to obtain a declaration of his rights, sec. 9835.2, Revised Codes, under the statutes involved and the court could properly refuse to render its judgment by virtue of the provisions of section 9835.6, Revised Codes, which provides: "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

Section 2620.2, Revised Codes, provides that the department of agriculture, labor and industry shall enforce the laws of the state regulating the standard of all dairy products. Section 3555, Revised Codes, provides that the general purpose of such department is the promotion of the agricultural and labor interests of the state of Montana. The Constitution authorizes the creation of the above department to "be under the control of a commissioner appointed by the governor subject to the confirmation of the senate." Const. of Montana, Art. XVIII, sec. 1, while section 3556, Revised Codes, provides that the Commissioner of Agriculture shall be the "chief executive officer of the department of agriculture, labor, and industry."

The attorney general must be served with a copy of the proceedings; he is entitled to be heard, sec. 9835.11, Rev. Codes, and the law makes it his duty to "defend all causes to which the state, or any officer thereof, in his official capacty, is a party." Sec. 199, Rev. Codes.

Pursuant to the duties thus enjoined upon him by the law, on July 25, 1945, the attorney general appeared in the district court action for and on behalf of the defendant state officers and filed therein a motion to strike the complaint. After hearing, the motion was denied and on September 6th the defendants interposed a demurrer to plaintiff's complaint. The demurrer was overruled, whereupon the defendants filed an answer upholding the constitutionality of the statutes involved.

The record in this case affirmatively shows that the defendant public officers and the attorney general and assistant at-

torney general are each and all asserting the validity and constitutionality of the public laws under attack, sections 2620.45 and 2620.46, Rev. Codes; that these public officers are vigorously defending and contesting plaintiff's suit; that they have adopted and followed the proper procedure; that they have filed timely and appropriate peladings, including an answer placing in issue the material allegations of plaintiff's complaint, which defendants seek to have dismisse dand, additionally, pray that the court render a declaratory judgment determining that sections 2620.43 to 2620.46, Revised Codes, inclusive, and all their provisions are constitutional.

With the filing on September 27, ·1945, of the answer, issue was joined between plaintiff and the defendants. Thereafter on January 11, 1946, the cause was placed on the trial calendar and set for trial for January 31, 1946.

On January 28, 1946, being four months after issue joined and but three days before the date set for the trial, the relators, being eighteen in number, presented to the district court a petition for leave to intervene in the action. On such ex parte application the district court made an order granting leave and thereupon on January 28, 1946, relators filed in the district court action a pleading designated as ''Complaint in Intervention and Answer to Complaint of Plaintiff in Union with Defendants.''

. Thereafter on motion of plaintiff the court ordered the complaint in intervention stricken from the files, whereupon, in an original proceeding commenced by relators in this court, a majority of the court caused a writ of supervisory control to issue directing the district court to set aside its said order. See State ex rel. Westlake et al. v. District Court, Mont. 167 Pac. (2d) 588, decided March 23, 1946.

On May 11, 1946, relators filed in the district court an amended complaint in intervention to which the plaintiff interposed a demurrer. On June 17, 1946, the district court sustained° the demurrer. Thereupon relators returned to this court and in a second original proceeding, No. 8681, petitioned for a second

writ of supervisory control to annul said order of the district court sustaining plaintiff's demurrer to relators' amended complaint in intervention.

The first six paragraphs of relators' petition in this court read:

"Come now Lowell B. Westlake of Bozeman, Gallatin County, Montana, Jake Tiedeman of Bozeman, Gallatin County, Montana, Howard Doggett of Townsend, Broadwater County, Montana, Edward Deschamps of Missoula, Missoula County, Montana, Fred Madsen of Missoula, Missoula County, Montana, Jesse Dillon of Livingston, Park County, Montana, John Butzher of Livingston, Park .County, Montana, Roy Shumate of Helena, Lewis and Clark County, Montana, Claude C. Gray of Big Timber, Sweetgrass County, Montana, J. M. Rook of Big Timber, Sweetgrass County, Montana, W. N. Clayton of Big Timber, Sweetgrass County, Montana, Montana State Farm Bureau, Inc., a corporation, American Dairy Association of Montana, Inc., a corporation, and Montana Creameries Association, an unincorporated association of creamery owners and operators, H. B. Hirsh of Butte, Silver Bow County, Montana, H. S. Batchelder of Manhattan, Gallatin County, Montana, Fred Traher of Great Falls, Cascade County, Montana, and the Montana State Grange, Relators and respectfully show to the court:

"That an action entitled O. L. Brackman, Plaintiff v. Albert H. Kruse, Commissioner of Agriculture of the State of Montana, et al., Defendants, No. 19801, is now pending in the District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clark, upon the complaint of the Plaintiff O. L. Brackman and the answer of the defendants Albert H. Kruse, Commissioner of Agriculture of the State of Montana, and Thomas E. McMasters, Dairy Commissioner of the State of Montana, and the issues on said pleadings have not been determined and trial on the merits has not been had, and no date for trial has been set.

"II.   That the individual Relators above named are, unless

otherwise noted herein, farmers and ranchers owning and operating their own farms and ranches and producing from dairy herds, owned by said Relators and kept on their respective ranches, milk, cream and the products thereof for sale on the open market for such products within the State of Montana.

"III. That the Relators Westlake, Tiedeman, Doggett, Madsen, Hirsh, Batchelder and Traher are owners and operators of creameries at Bozeman, Townsend, Missoula, Butte, Manhattan and Great Falls, Montana, respectively, or directors of creameries, all of which creameries are, and have at all times mentioned in their amended complaint in intervention in this action in the said District Court been, engaged in the purchase of milk, cream and dairy fat from producers, farmers and ranchers, in the State of Montana, and have been engaged in the production of cream, butter, butter fat, cheese and similar products of milk and cream base for sale in, and selling the same in the open market, intrastate and interstate, in the State of Montana, and are so engaged at present.

"IV. That the Relator Montana State Farm Bureau is a corporation duly organized by farmers in and of the State of Montana on March 1, 1928, and existing under the laws of the State of Montana, with principal office at Bozeman, Montana, for the purpose of protecting and advancing the interest of all types of agriculture in Montana, and, as such, the Montana State Farm Bureau is a member of the American Farm Bureau Federation, which Federation is an association of like State Farm Bureaus organized in forty-six states of the United States of America.

"V. That the Relator American Dairy Association of Montana is a corporation duly organized by dairy farmers of Montana on April 1, 1940, and existing, under the laws of the State of Montana, with principal office at Helena, Montana, for the purpose of research in the field of dairy products in Montana, and of developing the market for such products, and improving methods for production of dairy products, and advocating their use by the consuming public. That said corporation is a member

of the American Dairy Association, a national organization composed of thirty-five or more American Dairy associations organized as separate corporate entities in each of thirty-five or more states of the United States.

"VI. That the Relator Montana State Grange is a voluntary, unincorporated association of farmers and ranchers owning, leasing and operating farms, ranches and livestock herds in Montana, including herds of dairy cattle, organized in Montana more than twenty-five years ago for the purposes of protecting and advancing the cause of agriculture, including dairy production, economically and socially, in the State of Montana, and active in the prosecution of such objects and purposes to the date hereof.

"That all of said Relators, plaintiffs in intervention in said action in the District Court are buyers and consumers of milk, creamery butter, cheese and other dairy products, and all are so described in paragraphs I through VI of their amended complaint in intervention and in the said action in the District Court, as well as producers, sellers and suppliers of said products."

Attached to relators' petition is a copy of each of the pleadings filed in the district court action together with the order complained of. The relators allege that, "at the time said Order sustaining said Demurrer was made, it was stated by Respondent Court and Judge that it was desired that this Supreme Court finally and definitely determine the question as to whether Relators, on the basis of their Amended Complaint in Intervention, have the requisite interest to qualify as intervenors."

When ruling on plaintiff's demurrer to the amended complaint in intervention as well as when determining plaintiff's motion to strike from the files relators' original complaint in intervention, the question before the trial court was the right of the relators, under the law, to intervene in the suit which the plaintiff Brackman had brought against the defendants, commissioner of agriculture and dairy commissioner.

The legal question presented is: ''Does the law accord to private persons the right to intervene in this representative litigation brought, against state officers under the declaratory judgments Act, to test the validity and contsitutionality of public statutes, sections 2620.45 and 2620.46, Rev. Codes, when such defendant state officers, represented throughout by the attorney general of the state, are engaged in good faith in defending the action in the public interest?''

The rule is that when public officers are engaged in litigation to protect public rights, and their pleadings and procedure maintain the public interest, no private person is entitled to intervene. 1 Bancroft Code Pleadings, p. 862, sec. 592; 1 Bancroft's Ten Year Supp., p. 328, sec. 592; State Bank of Outlook v. Sheridan County, 72 Mont. 1, 230 Pac. 1097; Town of Irondequoit v. Monroe County, 171 Misc. 125, 11 N. Y. S. (2d) 933; Smithberger v. Banning, 130 Neb. 354, 265 N. W. 10; City of Omaha v. Douglas County, 125 Neb. 640, 251 N. W. 262; State v. Farmers' State Bank, 103 Neb. 194, 170 N. W. 901.

''Ordinarily, it seems, a person whose interests are already represented will not be permitted to intervene. However, intervention by such person has been permitted where there is collusion between the original parties.'' 47 C. J. 104, sec. 198. See also, 20 R. C. L. 685, sec. 23; Drainage Dist. No. 1 of Lincoln County v. Kirkpatrick-Pettis Co., 140 Neb. 530, 300 N. W. 582, 584, Fink v. Bay Shore Terminal Co., 4 Cir., 144 F. 837, affirmed in Zell v. Judges of Circuit Court of the United States, 203 U. S. 577, 27 S. Ct. 777, 51 L. Ed. 325.

Taxpayers, ratepayers, consumers and others similarly situated have no absolute right to intervene in litigation conducted by public officers to protect public rights, it being considered that the representation by the governmental authorities is adequate to protect such interests in the absence of gross negligence or bad faith on the part of public officers. State Bank of Outlook v. Sheridan County, supra; United States v. Houde Engineering Corp., D. C., 9 F. Supp. 836; O'Connell v. Pacific Gas & Elec. Co., 9 Cir., 19 F. (2d) 460.

The state is entitled to the benefit of the presumption that its officials will omit no duties which the law lays upon them. Sec. 10606, Rev. Codes; State Bank of Outlook v. Sheridan County, supra; Town of Irondequoit v. Monroe County, supra; 52 Am. Jur., Title "Taxpayers' Actions," p. 18, sec. 26.

In their amended petition the intervenors allege that they are all taxpayers in their respective counties; that they are engaged in the production of dairy products in the state and that they are consumers of such products. It is quite obvious that all such interests as intervenors may have in the litigation pending in the district court are adequately represented therein by the defendants and by the attorney general of the state of Montana and this court has definitely ruled in State Bank of Outlook v. Sheridan County, supra, that in the absence of any suggestion of negligence or wrongdoing on the part of such public officers so handling such litigation "the complaint in intervention fails to state facts sufficient to warrant intervention."

In the record before this court there is not even a suggestion of negligence, fraud, collusion or wrongdoing of any kind on the part of any of the state officers defending the action.

"No rule is better settled or more essential to the rights of parties litigant than that every person is entitled to access to courts of justice without interference from persons who have no interest in the matters in litigation." In re McClellan's Estate, 27 S. D. 109, 129 N. W. 1037, 1039, Ann. Cas. 1913C, 1029; Drainage Dist. No. 1 of Lincoln County v. Kirkpatrick-Pettis Co., supra.

"It is universal that no one has any right to intervene in any action unless he has some right to protect which is not being protected. On the other hand, it may be accepted as a general rule that one who is a necessary party to a suit or action when it is commenced, so that the judgment or decree must be wholly or substantially inoperative unless he is made a party to it, is entitled to intervene." 39 Am. Jur. 934, sec. 60.

"Persons who are not parties of record to a suit have no standing therein which will enable them to take part in or con-

trol the proceedings. If they have occasion to ask relief in relation to the matters involved, they must either contrive to obtain the status of parties in such suit or they must institute an independent suit." 39 Am. Jur., title "Parties," 928, sec. 55.

Intervention is purely a creature of statute having come from the civil law and the Code Napoleon. The Montana statute, section 9088, Revised Codes of Montana of 1935, was borrowed from the California Code which in turn took its statute from the Code of Louisiana which follows the civil law. Moreland v. Monarch Min. & Mill. Co., 55 Mont. 419, 178 Pac. 175; In re Ghio's Estate (Rocca v. Thompson), 157 Cal. 552, 108 Pac. 516, 137 Am. St. Rep. 145, 37 L. R. A., N. S., 549.

The right of intervention, being of statutory origin, must be exercised according to the statute authorizing it for the statute governs the right as well as the method to be pursued and those applying for leave to intervene in an action must bring themselves within the provisions of the statute and substantially comply with its requirements.

"The burden rests upon one seeking to intervene to show that his is a proper case and the complaint or petition must state facts sufficient, if true, to establish the right or interest which the intervenor claims, else he has no longer a standing in court as a litigant, if proper objection is made." 2 Bancroft's Code Practice and Remedies, p. 1145, citing, among other authorities, Wood v. Robbins, 67 Mont. 409, 215 Pac. 1101; Cook v. Gallatin R. Co., 28 Mont. 340, 355, 72 Pac. 678, and Griffith v. Montana Wheat Growers' Ass'n, 75 Mont. 466, at page 472, 244 Pac. 277. Also see 20 Cal. Jur. 523 and People v. Brophy, 49 Cal. App. (2d) 15, 120 Pac. (2d) 946, 957.

In State Bank of Outlook v. Sheridan County, supra, a resident taxpayer of the defendant county attempted to intervene in an action brought by the bank to recover from the county on a claim for money due. The county appeared in the action by the county attorney who filed an answer and who was defending the suit. This court, in holding that the taxpayer was without right to intervene, said: "Section 4819, Revised Codes, declares:

'The county attorney is the public prosecutor and must * * * defend all suits brought against * * * his county.' When the county attorney appeared and filed an answer, the presumption at once arose that he regularly performed his official duty. Section 10606. * * * It cannot be charged that the county attorney either failed or refused to act, for he did act, and the mere fact that he did not oppose the plaintiff's claim in toto does not raise any presumption of bad faith or corrupt practice on his part.

"If one taxpayer, merely by virtue of the fact that he is such, may intervene in this action, every other taxpayer may do so; and, if intervention is permitted upon the showing here made, a taxpayer may intervene in every action prosecuted against a county, even though the proper representative of the county has interposed a complete defense. * * *

"In the absence of any suggestion of negligence or wrong-doing on the part of the county attorney, the complaint in intervention fails to state facts sufficient to warrant intervention."

Jersey Maid Milk Products Co. et al. v. Brock, Director of Agriculture et al., 13 Cal. (2d) 661, 91 Pac. (2d) 599, 600, was an action by the plaintiffs as producers, distributors and con-sumers· of milk within a designated area, to enjoin the enforce-ment and administration of the provisions of the California statutes relating to the stabilization of the milk industry. The Western Holstein Farms, Inc., a corporation, and others inter-vened in the action following which the district court made an order granting plaintiffs' motion to strike intervenors' com-plaint from the files of the action and the intervenors appealed. In affirming the trial court's order striking the complaint in intervention, the Supreme Court of California, in part said:

"Interveners are distributors of milk within the Los Angeles county area, and like the plaintiffs in this action are interested in the validity of said chapter of the Agricultural Code, and also like the plaintiffs, they are opposed to the enforcement of the provisions of said chapter and the stabilization plan formulated thereunder. They contend, therefore, that they have such 'an

interest in the matter in litigation', and in the success of the plaintiffs in said action that entitles them to intervene in the action under the terms of section 387 of the Code of Civil Procedure.

"The sole question for decision, therefore, is whether the interveners have any interest in the proceeding that will entitle them to intervene as parties therein. * * *

"It has * * * been held that the interest which entitles a party to intervene in an action between other parties must be in the matter in litigation in the suit as originally brought, and of such a direct and immediate character that the intervener will either gain or lose by the direct effect of the judgment therein. Dennis v. Spencer, 51 Minn. 259, 53 N. W. 631, 38 Am. St. Rep. 499.

"In the present action the matter in litigation in the suit as originally brought, as we have stated before, is whether or not the defendant should be enjoined from enforcing the terms of said chapter against the plaintiffs. Interveners do not claim to be stockholders, or the owners of any interest in the property of either or any of the plaintiffs, and, of course, they have no interest in the defendant. They have, therefore, no direct interest in the matter in litigation in this action. Having no direct interest in the matter in litigation in this action, they had no right under section 387 of the Code of Civil Procedure to intervene therein, and the trial court properly granted the motions to strike the complaint in intervention from the files of said action. Grand Rapids v. Consumers' Power Co., 216 Mich. 409, 185 N. W. 852.

"We might add, before closing this opinion, that in the case of La Mesa Lemon Grove, etc., Irr. Dist. v. Halley, supra [195 Cal. 739, 741, 235 P. 999, 1000], the court observed that, 'If the proposed interveners desire to file a brief as amici curiae in the pending proceeding, application to that end would no doubt receive favorable consideration. By reference to the record in the main proceeding, being L. A. No. 16986, supra ([13 Cal. (2d) 620] 91 Pac. (2d) 577), and to the opinion rendered therein,

it will be noted that the attorneys for the interveners were granted the right to file a brief as amici curiae; that such a brief was filed; and the same was given extended consideration in our opinion therein. Interveners were, therefore, given ample opportunity to be heard upon each and all of the legal issues involved 'in the suit as originally brought'.''

In the instant case in the order sustaining the demurrer to the amended complaint in intervention the learned trial judge announced his willingness to hear relators' counsel amicus curiae, thus following the procedure suggested in the case of Jersey Maid Milk Products Co. et al. v. Brock, Director of Agriculture, et al., supra. The trial court's order and opinion, in part, recites: ''The Court is of the opinion that State Bank of Outlook v. Sheridan County, 72 Mont. 1, 230 Pac. 1097, is controlling, requires that the demurrer be sustained, and precludes intervention in a case such as at bar until the Supreme Court sees fit to modify the scope and effect of that decision.

''In the absence of any allegations of fraud or collusion between plaintiff and defendants it appears that the interests of the plaintiffs in intervention are already adequately represented. * * *

''The Court has frequently heard counsel amicus curiae whose clients' interests were thought to be affected by pending litigation. Such permission if applied for here would be granted. However, plaintiffs in intervention are not deemed to have such a direct interest as to authorize their filing pleadings in the action and participating as parties to the suit.''

The relators do not claim adversely to both the plaintiff and the defendants in the action. They claim no part of the relief sought by the plaintiff. Both relators and defendants uphold the constitutionality of the statute under attack, both ask that plaintiff's complaint be dismissed and both are in substantial agreement as to the merits of the controversy.

The majority opinion concedes that the relators are already represented by reason of the attorney general taking issue on the material questions in the action but asserts that the position

of the relators and that of the attorney general is not in accord in all respects.

Of course, in defending the action, the state's officers are not required to first consult and obtain the approval of relators before determining upon their course of procedure or before filing their pleadings and the fact that relators desire additional questions injected into the litigation certainly furnishes no grounds for intervention. As was said in Drumhiller v. Wright, supra [64 Cal. App. 498, 222 Pac. 167], "It being conceded that they [the public officers] are acting in good faith, they are not bound to interpose objections which they may think cannot be sustained, even though others in the situation of Mr. Harris or his counsel may be of a different opinion."

The majority opinion comments on the fact that defendants' answer fails to specifically deny the allegation in plaintiff's complaint to the effect that the manufacture and sale of oleomargarine is under the regulation of the Internal Revenue Department of the United States and subject to the pure food and drug acts of Congress. Such allegation is but a conclusion of law of the pleader, the denial of which raises no issue. It is the duty of the court, not the pleader to determine the law. Johnson v. Herring, 89 Mont. 156, 295 Pac. 1100. The courts take judicial notice of whatever is established by law and of the public and private official acts of the legislative, executive and judicial departments of this state and of the United States, section 10532, Rev. Codes, and, in determining whether the manufacture and sale of oleomargarine is controlled by regulations of the Internal Revenue Department of the United States and by an act or acts of Congress, the "courts may resort for their aid to appropriate books or documents of reference," section 10532, Rev. Codes, including the statutes of the United States wherein are found the controlling acts.

The majority opinion observes that defendants' answer admits the allegation in plaintiff's complaint to the effect that "oleomargarine is a nutritious, wholesome healthful food" while relators' complaint in intervention denies such allegation. The

only possible relevancy of the foregoing allegation would be on the question of whether section 2620.45, Revised Codes, was enacted under the taxing power or under the police power of the state. Whether it is the one or the other has no material bearing upon the right of the relators to intervene. It is wholly immaterial whether the imposition of the license tax provided for in section 2620.45, Revised Codes, was under the taxing power as defendants assert or under the police power as relators contend for the facts persist that the state possesses both powers and the legislature, in its enactment of laws, may exercise either or both powers.

The mere fact that the defendant state officers did not deny all the allegations of plaintiff's complaint in toto does not raise any presumption of bad faith or corrupt practice on their part so as to warrant intervention by private persons. State Bank of Outlook v. Sheridan County, supra.

Section 9088, Revised Codes, requires a person seeking to intervene in an action to have "an *interest* in the matter in litigation, in the success of either of the parties, or an *interest* against both." "This interest must be individual and not public, direct and not indirect, present and not remote. Interest in the result or outcome of the action will not suffice." Town of Irondequoit v. Monroe County, supra [11 N. Y. S. (2d) 939].

The word "interest" as determining the right to intervene contemplates a property "right" or "share" and is not intended as a synonym for "concern." Jenkins v. McGovern, 136 N. J. Eq. 563, 43 A. (2d) 526. "The interest must be direct and not consequential, and must be such an interest as is proper to be determined in the proceeding in which the intervention is sought." Bechtel v. Axelrod, Cal. App., 119 Pac. (2d) 424, 425.

In construing section 9088, Revised Codes, supra, the majority opinion asserts that by providing for "leave of court" the trial judge is left to determine in his discretion as to what measure of latitude he shall allow one who seeks to intervene. Here, the trial court denied intervention and sustained plaintiff's demurrer, yet this court issues its writ to compel the trial court

to annul and set aside its order and to allow intervention thereby effectively controlling and interfering with a proper exercise of judicial discretion by the trial court and compelling it to decide in the particular way that a majority of this court would have decided had they been sitting on the district bench when the matter was originally presented. I find no authority warranting such action by this court. See State ex rel. Anderson et al. v. Gile, Mont., 172 Pac. (2d) 583.

It is elementary that the relator intervenors must take the suit as they found it on January 28, 1946, the date of their intervention, at which time the cause was not only at issue and ready for trial but it had actually been set for trial. "An intervener must take the suit as he finds it, and is bound by the previous proceedings in the case. Consequently he cannot complain of the form of the action, or of informalities or defects in the proceeding, between the original parties * * *." 14 Standard Ency. of Procedure 330; Drainage Dist. No. 1 of Lincoln County v. Kirkpatrick-Pettis Co., supra. The law does not permit the intervenors to change the position of the parties, Willett v. Jordan, 1 Cal. (2d) 461, 35 Pac. (2d) 1025, nor to change the issues nor to enlarge the scope of the action. Lindsay-Strathmore Irr. Dist. v. Wutchumna Water Co., 111 Cal. App. 688, 296 Pac. 933; Wright v. Jordan, 192 Cal. 704, 221 Pac. 915; People v. Brophy, supra.

In Twin City Milk Producers Ass'n v. Helger, 199 Minn. 124, 271 N. W. 253, 254, the court said: "That an intervenor has no right to change the issues between the original parties and introduce into the action new and foreign issues is the rule that obtains in the great majority of jurisdictions. Ebersbach Const. Co. v. Charles Ringling Co., 100 Fla. 1270, 131 So. 148; Fountain v. Bryan, 176 Ga. 31, 166 S. E. 766; Steltzer v. Compton, 164 Iowa 465, 145 N. W. 896, 897; Farmers' & Merchants' State Bank of Wakefield v. Goe, 110 Kan. 65, 202 Pac. 835; Hallett v. Moore, 282 Mass. 380, 185 N. E. 474, 91 A. L. R. 572; Monticello Bldg. Corp. v. Monticello Inv. Co., 330 Mo. 1128,

52 S. W. (2d) 545; Fleming v. Larkin, 197 App. Div. 624, 189 N. Y. S. 412.

"We hold that the above-stated rule is also the rule in this state. * * *

"The fact that the main action in this case is a suit under the Declaratory Judgments Act can in no way affect the rules governing the right to intervene under our law and the limitations imposed thereon. And we hold that the law governing is not altered by the provisions of said act.

"We conclude that the appellants as intervenors have no right under the law of this state to be heard upon allegations introduced into the action by their complaint in intervention if such allegations change the issues in the main action or introduce new ones foreign thereto."

In Stone et al. v. Denver & S. L. R. Co., 78 Colo. 323, 241 Pac. 532, the president of the Brotherhood of Locomotive Engineers and other heads of similar labor unions were denied the right to intervene in a suit between a railroad and its creditors involving a reduction of wages below the wage schedule theretofore recommended by the United States Labor Board and adopted by the railroad's receivers. Also see People ex rel. Glidden v. Green, 1 Idaho 235; City of Alhambra v. Jacob Bean Realty Co., 138 Cal. App. 251, 31 Pac. (2d) 1052; Utah Power & Light Co. v. Ogden City, 95 Utah 161, 79 Pac. (2d) 61; Grand Rapids v. Consumers' Power Co., 216 Mich. 409, 185 N. W. 852.

In the instant case the defendant Commissioner of Agriculture of the state of Montana properly and adequately represents the interests of the public including those of relators as well as those of all other farmers and dairymen producing and consuming dairy products in the state. On the other hand, the relators do not and they may not act for nor represent the Commissioner of Agriculture nor may they act for the sovereign state of Montana in this suit. The law makes it the duty of the Commissioner of Agriculture and the attorney general to represent the public interests including those of the state in the matter in controversy. The relators have no such interest as would

enable them to appear as plaintiffs in an action to test the validity of sections 2620.45 and 2620.46, Revised Codes, for they are liable for none of the license fees provided for therein nor are they injuriously or adversely affected by any of the provisions of the statute. The plaintiff could not have tested the validity of the statute by only making relators parties defendant for relators having nothing to do with the administration or enforcement of the statute or with the collection of the license fees provided for therein. .

The relators, being either private persons, private corporations or private associations of individuals, are not, under the law and the facts and circumstances shown by the pleadings, entitled to be admitted as parties in this action nor may they, with the aid of private counsel, oust the state's officers and compel them to abdicate and stand helplessly by marking time while relators take over, and, in their own way, try the law suit according to their own motions and theories.

Ours is a government of law and not of men. The law either entitles the relators to intervene or it denies them that right. The law as announced by Mr. Justice Holloway, speaking for this court in State Bank of Outlook v. Sheridan County, supra, plainly denies intervention to the relators. Such has been the law of this jurisdiction, without a break, for more than a score of years and such is the law which the able trial judge applied in the cause before us. Now, a majority of this court, without distinguishing or overruling the State Bank of Outlook Case, announces herein a holding and decision in direct conflict therewith and "supervise" the district judge for religiously following the law of the State Bank of Outlook Case and vacate, set aside and annul his order made pursuant to such law. The majority opinion herein and the State Bank of Outlook Case cannot both be the law. This court should either expressly overrule the State Bank of Outlook decision and repudiate the principles of law therein stated and applied, writing its reasons therefore, or, following that decision, it should apply those principles of law in this case. The members of the bench and bar as well as the

public generally are entitled to the protection and guidance that come from knowing with certainty whether the State Bank of Outlook decision or the majority opinion herein constitutes the law in this jurisdiction. Both decisions most certainly cannot stand.

I am further of the opinion that this is not a proper case for the issuance of a writ of supervisory control. If relators are entitled to apply to this court for the writ upon a ruling of the trial court sustaining a demurrer to their complaint then, in the future, each and every litigant has the same right and shall be entitled to a writ and to "supervise" the trial judge whenever the latter orders a pleading stricken or a demurrer sustained.

The supreme court has only such powers as are conferred upon it by sections 2 and 3 of Article VIII of the Constitution. Primarily this is an appellate court with "appellate jurisdiction only," and with power to exercise general supervisory control over inferior courts only "under such regulations and limitations as may be prescribed by law." Const. Art. VIII, sec. 2. I find no regulation nor authority prescribed by law that permits this court to ride the circuit on district judges and to entertain original proceedings to "supervise," vacate, set aside and annul the various and sundry non-appellable orders, as they are made by the trial courts, at the various stages in the progress of litigation pending in such courts.

Neither the plaintiff Brackman nor the defendants, Commissioner of Agriculture and Dairy Commissioner, were parties to the two original proceedings entertained by this court by means whereof the relators, who are neither necessary nor even proper parties to the plaintiff Brackman's suit, have successfully defeated and prevented the trial of such lawsuit for more than a year since issue joined.