LESLIE L. GAFFNEY, Claimant and Appellant, v. IN-
DUSTRIAL ACCIDENT BOARD of the State of Montana,
Defendant and Respondent.

No. 9453.
Submitted January 14, 1955. Decided August 22, 1955.
Rehearing Denied September 15, 1955.
287 Pac. (2d) 256

John C. Harrison, Leo J. Kottas, Helena, for appellant.

Arnold H. Olsen, Atty. Gen., LaVerne V. Harris, Spec. Asst. Atty. Gen., for respondent.

Mr. Harrison, Mr. Kottas, Mr. Olsen and Mr. Harris argued orally.

MR. JUSTICE BOTTOMLY:

This is an appeal from a judgment of the district court for Lewis and Clark County, which judgment affirmed the order of the Montana Industrial Accident Board in which the claim of Leslie L. Gaffney under the Act was denied.

The claimant Gaffney, an ex-service, unmarried man of about 54 years of age, was employed by the Montana state apprenticeship council, which was enrolled under Plan Three of the Compensation Act.

The record sets forth that on December 17, 1948, claimant, in his employment as a fieldman of the Montana state apprenticeship council, in ascending the stairs of the Jordan Hotel in Glendive, Montana, leading from the lobby to his room, and carrying a heavy bag or suitcase, slipped and stumbled on the stairstep throwing the weight on his left leg and thigh, rupturing the muscle therein and also striking his head on the top step; that with the assistance of the bellboy he got on his feet and did make it to his room, suffering a great deal of pain in the left thigh and leg and in his head; that when he reached Billings he went to Dr. Biehn who diagnosed the injury as ruptured muscle in his left thigh. For a period of months after December 17, 1948, he was treated by Dr. Biehn; that the muscles in his left leg gave him considerable pain and his locomotion was affected. The left arm and side of neck were impaired. This made it difficult and lessened his ability to drive a car, and his head continued to bother him.

September 13, 1949, claimant notified the Industrial Accident Board in substance that the accident at Glendive on December 17, 1948, resulted in a permanent disability and asked for a claim blank to file. The claim blank was furnished to claimant and was filed with the Board. A hearing on his claim was had on October 28, 1953, before the chairman of the Board, and at that hearing the chairman stated: "May I say that the Board, on September 15, 1949, wrote a letter to Mr. Gaffney in which was enclosed a claim blank with directions to Mr. Gaffney to fill out, and it also shows on October 19, 1949, Gaffney's claim for compensation was duly filed and there is no question of the timeliness of the filing of the claim."

The record discloses that the only sworn evidence presented at the hearing before the chairman of the Board was by the claimant Gaffney and Dr. Paul R. Schiewe.

Dr. Schiewe, physician and surgeon of the Veterans' Administration, Fort Harrison, Montana, was called as a witness by claimant. Dr. Schiewe had reviewed the files of claimant from the Veterans' Administration Hospital at Miles City, Montana.

Since December 17, 1948, it has been necessary for claimant to enter the Veterans' Administration Hospital at Miles City and Fort Harrison for treatment for his injury and general physical condition. Dr. Schiewe testified at the hearing before the Board, *inter alia,* that he had Leslie Gaffney under observation within the last past month at the Veterans' Hospital at Fort Harrison; that during the time he has made and had made clinical tests of the patient; that the records of the previous treatment of the Veterans' Administration Hospital at Miles City were examined; that at Fort Harrison Gaffney had a complete history and physical examination, laboratory studies and X-ray, as well as a complete evaluation of his medical illness; that it was shown that Gaffney was suffering from Parkinsonism or Parkinson's disease; that Gaffney's record shows he has, during the past six or seven years, had several falls and an automobile accident; that his reactions caused by Parkin-

son's disease would cause a greater tendency to fall; that a fall such as he described at the hotel in Glendive could possibly speed up his disability from Parkinson's disease; that the Miles City X-rays taken of his neck and shoulder, in the doctor's opinion, showed that considerable de-mineralization was present and that he "wondered if there was destruction in the joint" itself.

Dr. Schiewe further testified that in his interpretation in the curvical spine there were arthritic changes which could be due to *trauma* or age itself; that this condition is not synonymous with a herniated disc, but the usual disc has this association in X-ray findings—the joint space may be narrow; that a fall could cause it, and an injury to the neck or head could cause it; that it would be possible for an individual to have such an injury and have it lay dormant and thereafter a fall would aggravate it.

That a patient with Parkinson's disease, should he fall, regardless of the injury, such fall "might lead to a bone or soft tissue or the tendons, and their ability to recuperate is imapaired"; that a person with Parkinson's disease, if he falls and sprains his wrist, that wrist may become stiff, "ends up being stiff"; that atrophic changes occur rapidly and the patient ends up with a *progressively greater amount of disability*. When Dr. Schiewe was asked, "In other words, a person with Parkinson's disease who suffers an unusual fall, will aggravate his deterioration from the Parkinson's disease?" he replied: "I think I could say yes to that statement."

On cross-examination by the chairman, Dr. Schiewe was asked: "Q. There is some possibility a fall which Mr. Gaffney sustained in '48 might have aggravated or lighted up a preexisting condition of Parkinson's disease, is that right? A. Possibly. The way in which you put the question makes it sound to me like an infection type of disease; because I am not an authority on the disease, I would have to answer the question in the affirmative. In other words, I am unable to deny it."

In the doctor's opinion, Gaffney could have had Parkinson's

disease since 1918. He pointed out that multiple diseases are frequently present and have to be kept in mind all the time. "Q. Then, doctor, how would you answer this question: would this fall sustained by Mr. Gaffney in 1948, of itself, now cause him to be totally and permanently disabled, as we acknowledge he apparently is? A. You say, could the fall in '48 cause the permanent disability he now has?

Q. Yes, and I'd like to have you make as definite an answer as you can. Either you can relate it to his present condition, or you cannot relate it to his present condition. A. I feel that I honestly cannot relate the fall to his present 100% disability. That statement might have some weak points. Do you want a clarification? Q. No, that is sufficient."

The doctor's testimony is not as clear as one would like it to be; nevertheless in dealing with such elusive diseases as Parkinson's disease and cerebral arterial sclerosis and the effects of traumatic injuries in aggravating and accelerating such afflictions, even the most learned authorities may differ. However, taking all of Dr. Schiewe's testimony, he leaves no doubt that the fall of December 17, 1948, suffered by Gaffney, was and is a contributing cause to his present total and permanent disability, which condition the Board acknowledges. There is no sworn medical testimony in the record to the contrary. The only sworn witnesses before the district court were Leslie L. Gaffney and one Bryan D. Beauchamp. The respondent Industrial Accident Board offered no evidence. Such additional evidence as was adduced before the district court is unimportant and we therefore consider the matter as determined on the record made before the Board.

There is no dispute in this case as to the facts as found by the Board as follows:

"I. Leslie L. Gaffney, claimant herein, was injured in an accident arising out of and in the course of his employment by the Montana State Apprenticeship Council on or about the 17th day of December, 1948, at Glendive, Montana.

"That at the time of the accident the employer was enrolled

under the Workmen's Compensation Act of the State of Montana, Plan Three. That the defendant herein is the Industrial Accident Board.

"II. That following his accident and injury, which resulted from a fall on a stairway in the Jordan Hotel in Glendive, Montana, the claimant continued to work at his regular employment without loss of time or wages until he left the employment of the Montana Apprenticeship Council. That the claimant's claim for compensation resulting from the said accident was filed with the Industrial Accident Board on October 19, 1949, and alleged that the claimant's daily earnings had not been reduced by the injury."

In connection with his earnings Gaffney testified that he had stayed on the job and worked the best that he could, as he was directed to do, until he could not continue. The fact that after the accident, Gaffney could not do his job as well as before, and that he was instructed to continue and do the best he could, certainly brings into play subdivision 3 of section 93-1301-6, R. C. M. 1947. Lindblom v. Employers' Lability Assur. Corp., 88 Mont. 488, 295 Pac. 1007, 1010.

At the hearing before the chairman of the Board, on cross-examination the chairman of the Board asked Gaffney if he remained on the payroll steadily after the accident so Gaffney would not have to claim compensaton and Gaffney answered that he did not claim compensation at the time, although he filed the report of the accident and that he was kept on the payroll because he was entitled to leave time which he had accumulated. These statements in Gaffney's testimony stand undisputed. His employer did not testify.

The Industrial Accident Board founded its denial of Gaffney's claim on its deductions "that competent undisputed medical evidence established that the claimant is suffering and has been suffering for many years from a condition known to medical science as Parkinson's disease and, also, cerebral arterial sclerosis, both of which conditions have gradually progressed until the claimant is now at least partially permanently

disabled from remunerative employment. That competent medical evidence establishes that the claimant's accidental injury of 1948 is not the cause of his present disability, but that the main cause of his symptoms is Parkinson's disease and cerebral arterial sclerosis which are not the result of bodily injury, but are progressive diseases of a degenerative nature."

The district court adopted the findings of the Board and in the judgment entered ordered, "It is ordered and adjudged that the Industrial Accident Board of the State of Montana, respondent, regularly pursued its authority in denying the claim for workmen's compensation of Leslie L. Gaffney, applicant, that the findings of the Board are reasonable under all the circumstances of the case and are sustained; and that the appeal of Leslie L. Gaffney, appellant, is denied."

We cannot agree with the findings of the Industrial Accident Board or with the findings and judgment of the district court under the facts, circumstances and the evidence in this record.

We state again the holding set forth in Lindblom v. Employer's Liability Assur. Co., supra, "The Workmen's Compensation Act was enacted for the benefit of the employee * * *." The correctness of this conclusion is universally conceded. The Industrial Accident Board is a state board. The Act directs that the Board's first duty is to administer the Act so as to give the employee the greatest possible protection under the purposes for which the Act was enacted. The spirit and intent as well as the letter of the Act must be considered. Compare, Miller v. Aetna Life Ins. Co., 101 Mont. 212, 53 Pac. (2d) 704. There is no substantial sworn evidence in the record to sustain either the findings of the Board or the findings of the court. The evidence in the record preponderates against the findings.

At the threshold it should be noted that the rule in cases involving the Workmen's Compensation Act is that the Act is to be liberally construed to effect its purposes, and when in doubt the doubt is to be resolved in the employee's favor. R. C. M. 1947, sections 12-202, 92-838; Grief v. Industrial Acci-

dent Fund, 108 Mont. 519, 93 Pac. (2d) 961. "Liberal construction of the act is commanded in order that the humane purposes of the legislation shall not be defeated by narrow and technical construction * * *." Tweedie v. Industrial Accident Board, 101 Mont. 256, 53 Pac. (2d) 1145, 1148.

The employer takes the employee subject to his physical condition when he enters his employment. Compensation laws and payments are not made solely for the protection of super physical persons nor for employees in normal physical condition, but for those also who are in subnormal condition who are accepted for employment. No standard of health or physical fitness for an employment is prescribed by our law or statute in this kind of case to entitle an employee to compensation for an injury arising by accident out of and in the course of his employment; therefore none may be arbitrarily set.

The rule that the employer takes the employee as he finds him is well established. Compare Peitz, v. Industrial Accident Board, 127 Mont. 316, 264 Pac. (2d) 709; Jones v. California Packing Co., Utah, 244 Pac. (2d) 640; 1 Honnold on Workmen's Compensation, section 98, page 302. The fact that an employee was suffering from a pre-existing disease or disability does not preclude compensation if the disease or disability was aggravated or accelerated by an industrial injury which arose out of and in the course of the employment. See Nicholson v. Roundup Coal Min. Co., 79 Mont. 358, 380, 257 Pac. 270; 1 Larson, Workmen's Compensation Law, section 12.20, citing federal cases and 38 states supporting this rule. The reason for the rule is simple justice to human beings.

It is generally held that the fact an injury contributes to a pre-existing disease in bringing disability does not affect the right to compensation where the accidental injury occurred in the course of employment. In Big Muddy Coal & Iron Co. v. Industrial Board, 279 Ill. 235, 241, 116 N. E. 662, 664, the court said: "This incapacity is proximately due to the accident operating upon his diseased physical condition, and not to his ailment independently of such injury." Compare, Gilcrest

Lumber Co. v. Rengler, 109 Neb. 246, 190 N. W. 578, 28 A. L. R. 200; Spencer v. Industrial Commission, 87 Utah 336, 40 Pac. (2d) 188.

In Hills v. Oval Wood Dish Co., 191 Mich. 411, 158 N. W. 214, 215, the court said: "Assuming that such disability is being prolonged by the disease, there is yet no point at which the consequences of the injury cease to operate. * * * The consequences of the injury extend through the entire period, and so long as the incapacity of the employe for work results from the injury, it comes within the statute, even when prolonged by preexisting disease." Compare Hanson v. Dickinson, 188 Iowa, 728, 176 N. W. 823.

There is no question but that Gaffney up to the time of his injury was performing his duties in a satisfactory manner, and that from and after his accidental injury his ability to do his work diminished and at the time of the hearing before the Board he was not able to perform any gainful work, being totally incapacitated. In Woodbury v. Frank B. Arata Fruit Co., 64 Idaho 227, 130 Pac. (2d) 870, 875, the court said: "The rule is well established in this jurisdiction that injury, resulting partly from accident and partly from a pre-existing disease, is compensable if the accident aggravated or accelerated the ultimate result; and it is immaterial that the claimant would, even if the accident had not occurred, become totally disabled by reason of the disease. [Citing cases.]" In Kauffman v. Cooperative Refinery Ass'n, 170 Kan. 325, 225 Pac. (2d) 129, 133, the court said, "The workmen's compensation act prescribes no standard of health or physical perfection for a workman. Carney v. Hellar, 155 Kan. 674, 127 Pac. (2d) 496. Accidental injuries are compensable where the accident only serves to aggravate or accelerate an existing disease, or intensifies the affliction. [Citing cases.]" Compare Jacobson v. Department of Labor and Industries, 37 Wash. (2d) 444, 224 Pac. (2d) 338, and cases cited.

In Levo v. General-Shea-Morrison, 128 Mont. 570, 280 Pac. (2d) 1086, 12 St. Rep. 77, this court affirmed what was said in

McCoy v. Mike Horse Min. & Mill. Co., 126 Mont. 435, 252 Pac. (2d) 1036, at page 1039, to-wit: "A liberal construction of the Compensation Act is commanded in order that the humane purposes of the legislation shall not be defeated by narrow and technical construction, and the intention of such requirement is for the benefit and protection of the injured workman * * *."

In Hunter v. Wm. Peper Const. Co., 46 Ariz. 465, 52 Pac. (2d) 472, 474, the court said, "It is of course true, under our decisions, that if some form of physical injury aggravates any already existing physical disease or condition, the injured workman is entitled to compensation to the extent of the disability caused thereby in the same manner as though his condition had been produced originally and directly by the injury."

It is the rule and familiar law in most states that when preexisting diseases are aggravated by an injury and disabilities result, such disabilities are to be treated and considered as the result of the injury.

Under the procedure of the Industrial Accident Board of having the hearings on a claim for compensation before the chairman of the Board only, or before one member of the Board, or an examiner or referee, it is only natural for one individual to give more weight to some particular thought or bit of evidence, or more credence to some particular point, in writing his findings, and with the press of other duties the members of the Board, not seeing the witnesses nor hearing the evidence in such cases cannot contribute their knowledge nor reasoning to the same. The full participation of all members of the Board is vital to the questions coming before it, and the work load has increased to the point where it appears that a full time board should function continually as required by the first sentence of R. C. M. 1947, section 92-109, which provides that "A majority of the board shall constitute a quorum for the transaction of any business." It is apparent that a full board should hear and determine such cases. Certainly, the examiner or referee, or one member of the Board, and he may not be an at-

torney, is in no better position to pass upon the technical questions presented than a majority of this court.

In this class of cases the rule is that the burden of proving that the injury was a contributing cause of the condition of the claimant may be proved by circumstantial evidence or inferences having a substantial basis in the evidence. 1 Honmold on Workmen's Compensation, section 126, pages 464, 466, 467, citing cases from Michigan, Illinois, West Virginia and Massachusetts. The only sworn testimony before the Board, from which a rational finding can be made, is that the injury received by claimant was a contributing cause of his present total and permanent disability. The frank admission of the testifying doctor that he could not state positively one way or another need not bar the claimant from recovery if on the whole record it can be said that he is entitled thereto. The law does not require the impossible. A fact may be established by indirect evidence or that which tends to establish the fact by proving another which, though true, does not of itself conclusively establish that fact, but which affords an inference or presumption of its existence. R. C. M. 1947, section 93-301-10. Compare Moffett v. Bozeman Canning Co., 95 Mont. 347, 356-359, 26 Pac. (2d) 973.

The reasonable deductions from the record are that Gaffney ▆ was in reasonably fair condition physically, capable of and performing his duties prior to his accident, and that following the injury his health began to deteriorate, until at the time of the hearing the affliction from which he suffered and now suffers has rendered him totally and permanently disabled. Dr. Schiewe's testimony and the uncontradicted testimony of Gaffney, in our judgment, is evidence sufficiently substantial and competent to sustain the deduction that the accident was a contributing cause of Gaffney's present condition. In other words, the rule that the claimant must show that the injury was a contributing cause of his present condition does not require demonstration of an undemonstrable proposition, but merely that he produce sufficient evidence, direct, indirect or circumstantial

to cause in the unprejudiced mind a conviction that such was the fact. R. C. M. 1947, section 93-301-4.

Just because medical science has not advanced to the point where one learned therein can honestly and positively say that "the injury has contributed to and is the proximate cause of claimant's total incapacity" or that "the injury has not contributed to and is not the proximate cause," is one who admittedly has sustained an injury in the course of and arising out of his employment, following which he becomes totally incapacitated for work, to be denied compensation? We think not.

It is equally true that where the employer seeks to attribute the disability of the injured employee to causes for which the employer is not responsible, the burden of proof in that regard is on the employer. Compare Marshall v. C. F. Mueller Co., 135 N. J. L. 75, 50 A. (2d) 158. In the instant case the employer made no showing whatsoever.

From what has been said, we hold that the findings of the Board and of the district court are contrary to the preponderance of the evidence, and the judgment is therefore reversed and the cause remanded to the district court with instructions to remand the proceedings to the Industrial Accident Board for allowance of such compensation to Leslie L. Gaffney as is provided by statute.

MR. CHIEF JUSTICE ADAIR, concurs.

MR. JUSTICE ANDERSON: (specially concurring).

The rules regarding this cause were announced and formulated in the case of Moffett v. Bozeman Canning Co., 95 Mont. 347, 26 Pac. (2d) 973, 977. There the court said: "The record contains no direct evidence from which it can be said that the injury was the proximate cause of claimant's present condition; this, not because of failure on the part of claimant properly to present his case, but because, on the frank admission of the doctors, no man on earth knows positively the exact cause of such an affliction [Parkinson's disease] in any given case; medical science has not advanced to a point where it can posi-

tively trace back from the effect and declare the cause of the disease in a given patient."

Here the disease was present but the aggravation from the accident was great, declared the claimant. How can medical science be any more positive about aggravation than it can of cause and effect.

The Moffett Case and this case are somewhat distinguishable; however, the differences, as I understand them, are that of degree alone.

 I agree that the cause should be reversed.

MR. JUSTICE ANGSTMAN: (concurring in part and dissenting in part).

I agree that if a disease is aggravated or accelerated by an ██ injury sustained by an industrial accident the case is one justifying an award of compensation as held in the majority opinion. The difficulty here, as I see it, is to trace the present disability of claimant to the injury sustained in 1948. The opinion of the doctors testifying for claimant leaves the matter in doubt or at least fails to sustain the burden of proof resting upon him that any disability he now has was traceable to or produced by the injury of December 1948, rather than to the disease which he has suffered for many years.

Dr. Schiewe sums up the views of the medical witnesses as follows: "I would say that injury has very little to do with the present disability." As is shown by the testimony of Dr. Schiewe quoted in the majority opinion the strongest he would go was to say that "possibly" a fall in 1948 might have aggravated or lighted up a pre-existing condition of Parkinson's disease.

There are distinguishing features between this case and the case of Moffett v. Bozeman Canning Co., 95 Mont. 347, 26 Pac. (2d) 973. There it was sought to show that an injury caused the Parkinson's disease. Here it is merely sought to show that the disease was aggravated by the injury.

On this record the board and the court were justified in holding that there was no evidence, direct or circumstantial, show-

ing that claimant's present disability is due to the injuries of 1948, as distinguished from the disease. Since there was proof that the injury possibly could have accelerated the disease, it is reasonably likely that evidence might be obtained to show such to be the fact. Instead of affirming the judgment, I would remand the case to the lower court for the taking of further evidence on the question above mentioned under the powers granted us under R. C. M. 1947, section 93-216.

MR. JUSTICE DAVIS:

I dissent. Two questions were argued in the district court and here, viz.,

(1) May the claimant recover in this case without an affirmative showing (a) of notice given as required by R. C. M. 1947, section 92-807, i. e., in writing, "within thirty days after the occurrence of the accident which is claimed to have caused the injury," or (b) of actual knowledge by the employer, his managing agent or superintendent of the accident and injury relied upon?

(2) Was the accident of December 17, 1948, a contributing proximate cause of the claimant's disability for which he may have compensation under the Act?

Before the Board the second only of these questions was considered. Judge Lessley, however, upon his review of the case expressly found (1) that notice of any kind was not given until February 9, 1949, (2) that no written notice "was served on appellant's employer or on the Industrial Accident Board [the insurer] by appellant, or on his behalf, within thirty days after the occurrence of the accident," and (3) that the employer had no actual knowledge of the accident or injury.

In answer to the second of these questions both Judge Lessley and the Board agreed that the accident of December 17, 1948, was not a contributing proximate cause of Gaffney's present disability, and that accordingly he was not entitled to recover on his claim here.

I agree with the district court and the Board in the conclu-

sions which they have reached. Consequently I would affirm their dismissal of this claim.

In explanation of my position I am sure no purpose will be served by a detailed summary of the evidence before the Board. It is enough for me to note that the additional evidence taken in the district court was stipulated by counsel on the oral argument of the cause here to be immaterial for any purpose on this appeal insofar as that evidence was not to be found in this record. Such evidence as the district court did hear in addition to that before the Board, and as that evidence appears in this record, is in my opinion wholly immaterial, and did not in any way alter the case for the claimant, which the Board ruled against him.

In these circumstances by my dissents in Levo v. General-Shea-Morrison and Liberty National Ins. Co., 128 Mont. 570, 280 Pac. (2d) 1086, 12 St. Rep. 77, and Rathbun v. Taber Tank Lines, Inc., and Liberty National Ins. Co., 129 Mont., 121, 283 Pac. (2d) 966, 12 St. Rep. 128, I have given at length my view of the function which this court performs when under the Workmen's Compensation Act of this state it applies the provisions of that statute liberally in accordance with R. C. M. 1947, section 92-838.

Accordingly I shall not repeat myself in these paragraphs further than to write that the evidence fully sustains the findings made below, specifically to the point that the claimant ignored R. C. M. 1947, section 92-807, and that neither notice nor knowledge of the accident of December 17, 1948, which it is argued caused or aggravated Gaffney's present disability, came to either the employer or the insurer until February 9, 1949, at the earliest. Here we are faced with no inquiry where the preponderance of the evidence lies, nor whether the findings made by the district court are supported by substantial evidence. For the evidence before us is all one way, i. e., in support of these findings by Judge Lessley.

The burden of proof rests with Gaffney to show affirmatively in making out his claim that he has complied with section 92-

807, supra. Maki v. Anaconda Copper Min. Co., 87 Mont. 314, 323, 324, 287 Pac. 170; Williams v. Anaconda Copper Min. Co., 96 Mont. 204, 207, 208, 29 Pac. (2d) 649; State ex rel. Magelo v. Industrial Accident Board, 102 Mont. 455, 462, 463, 464, 59 Pac. (2d) 785; Tassone's Case, 330 Mass. 545, 548, 116 N. E. (2d) 126; Goldstein v. Continental Baking Co., 28 N. J. Super. 55, 61, 100 A. (2d) 337; Korman v. Hygrade Food Products Corp., 131 N. J. L. 188, 189, 35 A. (2d) 690; Sanchez v. Bernalillo County, 57 N. M. 217, 222, 257 Pac. (2d) 909; Brown Shoe Co., Inc., v. Industrial Commission, 374 Ill. 500, 503, 504, 30 N. E. (2d) 4; Wheaton's Case, 310 Mass. 504, 506, 38 N. E. (2d) 617; Clifton v. Chrysler Corporation, 287 Mich. 87, 92, 93, 282 N. W. 912; Whitfield v. Traders & General Ins. Co., Tex. Civ. App., 106 S. W. (2d) 359, 362.

But by no reading of this record as I see the case can evidence be found which satisfies the statutory requirement of written notice given the employer or the insurer within thirty days, or of actual knowledge by the "employer or his managing agent or superintendent in charge of the work," the one or the other of which is a mandatory condition precedent to recovery by Gaffney. Maki v. Anaconda Copper Min. Co., supra; Williams v. Anaconda Copper Min. Co., supra; State ex rel. Magelo v. Industrial Accident Board, supra.

There is here no case which requires the construction liberal or otherwise of section 92-807, supra. There is before us, in short, no faint suggestion that the command of that statute has been met. Our problem is only to apply the plain language of the law, not to construe it. Chmielewska v. Butte & Superior Min. Co., 81 Mont. 36, 42, 43, 44, 261 Pac. 616; Sheridan County Electric Co-op., Inc., v. Montana-Dakota Utilities Co., 128 Mont. 84, 270 Pac. (2d) 742, 744, 11 St. Rep. 255; State ex. rel. Westlake v. District Court, 119 Mont. 222, 233, 234, 173 Pac. (2d) 896, 169 A. L. R. 827; State v. Holt, 121 Mont. 459, 481, 194 Pac. (2d) 651; Vaughn & Ragsdale Co., Inc., v. State Board of Equalization, 109 Mont. 52, 57, 58, 96 Pac. (2d) 420; Green v. City of Roundup, 117 Mont. 249, 252, 157 Pac. (2d) 1010; R.

410

C. M. 1947, section 93-401-15. Applied this statute and these authorities mean that the claimant Gaffney may not recover. As I see it that is all there is to this case.

It then becomes, I believe, our plain duty to affirm the judgment and order below within the rule of Birdwell v. Three Forks Portland Cement Co., 98 Mont. 483, 495, 40 Pac. (2d) 43; Tweedie v. Industrial Accident Board, 101 Mont. 256, 264, 265, 53 Pac. (2d) 1145; Wieri v. Anaconda Copper Min. Co., 116 Mont. 524, 531, 156 Pac. (2d) 838.

But upon the merits I reach the same conclusion if the case is to get that far. For I gather that between August 1946 and the date of the hearing before the Board on October 28, 1953, the claimant (1) on August 15, 1946, chipped his right elbow on a counter because his fingers slipped while pulling a staple "out of two pieces of paper"; (2) on November 29, 1947, slipped and turned his left foot back and a toe under near the first step of the stairway leading to the clerk's desk in the lobby of the Placer Hotel at Helena, Montana; (3) on March 1, 1948, slipped on an icy curb and fell while crossing a street in Denver, Colorado; (4) on December 17, 1948, slipped near the top of the stairway leading from the lobby in the Jordan Hotel at Glendive, Montana (the accident here in issue); (5) on July 6, 1949, slipped while stepping down to the sidewalk in Billings, Montana; and (6) on April 25, 1951, while driving his automobile near Volberg, Montana, collided with a sheep on the highway, and went off the road over a six-foot embankment and through a barbed wire fence into the adjoining field.

I need not set out in any greater detail the evidence upon which both the Board's order and the district court's judgment of dismissal stand, i. e., to show the solid factual basis for both. I shall, however, summarize the effect of that evidence, as I read it, in one sentence. The conclusion therefrom is irresistible that Parkinson's Disease was itself the cause of the accidents the claimant admits, including that which is the foundation of this claim; and that the fall of December 17, 1948, neither caused nor aggravated that disease with which admittedly Gaffney is

afflicted. To the contrary of this conclusion I find nothing at all.

Dr. Schiewe, a medical witness for Gaffney, actually says as much. For he testified flatly, "I feel that I honestly cannot relate the fall [of December 17, 1948] to his present 100% disability." At best in giving his testimony designed to relate the claimant's disability to this fall this expert witness could only answer, "It would be possible," or "Possibly," or "It's possible", seven or more times in the space of fourteen typewritten pages of evidence given and reported in question and answer form.

It is doubtful indeed that testimony of this kind will support a finding in Gaffney's favor. Susnik v. Oliver Iron Min. Co., 205 Minn. 325, 331, 286 N. W. 249; Owings v. Industrial Accident Comm., 31 Cal. (2d) 689, 692, 192 Pac. (2d) 1; Rust Engineering Co. v. Ramsey, 194 Va. 975, 979, 980, 76 S. E. (2d) 195. It is doubtful also that the claimant has sustained even the burden of proof which is with him of making out *prima facie* that the accident of December 17, 1948, was in some part a proximate cause of his presently existing disability. Nicholson v. Roundup Coal Min. Co., 79 Mont. 358, 374, 375, 257 Pac. 270. But on this record I need not reach or answer these questions.

It is enough, as I see the case, that the findings below upon which the denial of Gaffney's claim stands are abundantly supported by substantial evidence, that there is nothing in this record which contradicts the presumption the Board decided the case correctly, Moffett v. Bozeman Canning Co., 95 Mont. 347, 350, 351, 26 Pac. (2d) 973, and that the preponderance of the evidence is clearly with, not against, that decision and as well the judgment of the lower court which affirmed that decision. Moffett v. Bozeman Canning Co., supra, stressed by the majority, if applied to this record, eliminates altogether the testimony of Dr. Schiewe and the other medical authorities who appeared before the Board, leaving the claimant Gaffney not even a surmise upon which to stand and no circumstantial evidence at all to which to turn within the rule of that authority.