No. 86-470

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

WELDON R. CURREY,

        Claimant and Appellant,

    -vs-

10 MINUTE LUBE, Employer,

    and

STATE COMPENSATION INSURANCE FUND,

        Defendant and Respondent.


APPEAL FROM: The Workers' Compensation Court of the State of
Montana, The Honorable Timothy Reardon, Presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kelleher Law Office; Robert L. Kelleher, Jr.,
        Billings, Montana

    For Respondent:

        Crowley Law Firm; William J. Mattix, Billings,
        Montana


Submitted on Briefs: Feb. 13, 1987

Decided: April 21, 1987

Filed: APR 21 1987

*Ethel M. Harrison*

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant, Currey, appeals from an order of the Workers' Compensation Court awarding benefits, reasonable costs and attorney fees for a compensable injury, but ruling that the claimant was not entitled to temporary total disability benefits and denying his motion to submit additional evidence. We affirm.

The issues raised on appeal are:

1. Is the decision of the Workers' Compensation Court regarding appellant's entitlement to disability benefits under the Montana Workers' Compensation Act supported by substantial evidence?

2. Did the Workers' Compensation Court abuse its discretion in denying appellant's motion for a rehearing in order to submit additional evidence?

The defendant, Weldon Currey, is an auto mechanic. He was injured on January 13, 1984, when his truck, while stopped at a stop sign, was hit from the rear by another vehicle. At the time of the accident Currey was on his way to pick up cases of oil for his employer, 10 Minute Lube. Following the collision, Currey experienced pain and discomfort in his lower back and neck. He sought treatment from a chiropractor whom he had been going to previously.

Since childhood, Currey has had congenital scoliosis which causes the spine to grow unevenly. He also has a related disorder, syringomyelia, which affects the spinal cord, creating cysts in the cord which destroy surrounding nerve tissue. Due to this condition, repetitive moving or lifting heavy objects has been difficult for Currey throughout his life.

Typically, symptoms of syringomyelia can include atrophy and weakness in the upper extremities as well as loss of sensation to temperature and pain in the affected areas. Although a naturally progressive neurological disorder, the condition can remain undiagnosed and asymptomatic throughout a person's life. Usually the symptoms will begin to become noticeable in afflicted males between the ages of 20 through 40 years. Currey was 35 at the time of the accident. Since the accident, he has become aware of some symptoms associated with this disorder.

At the time of his industrial injury, Currey was employed as the manager of 10 Minute Lube, a Billings automotive shop which specializes in oil changes. As manager, Currey was responsible for taking inventory each night, balancing the daily books, and making a daily report to the owner, Francis Fanning. Currey informed Fanning of his injury the evening of the accident.

In April, 1984, Fanning sold 10 Minute Lube to Bill Simmons who changed the business' name to Master-Lube. At that time, Currey lost his position as manager and was required to work faster than was previously expected of the employees under Fanning's employ. In July, 1984, Currey left Master-Lube and became a serviceman for Hotsy Wy-Mont, a business which sells and services commercial cleaning equipment. He worked there for approximately six months, then quit with the intention of moving to California. Instead of moving, Currey remained in Billings employed for Mont-Dak Chemical as a delivery man for one month before returning to work at Hotsy Wy-Mont. As a part of all these jobs, Currey was required to lift equipment and supplies weighing from 50 to 100 pounds.

Currey filed a claim for wage benefits under Montana's Workers' Compensation Act on November 14, 1984, ten months

after the accident. He quit working for Hotsy Wy-Mont in July, 1985, after Dr. Nelson, a Billings neurologist, advised him to no longer perform activities which involved heavy lifting.

I.

The question as to whether there was substantial evidence to support the decision of the Workers' Compensation Court must be reviewed in light of the presumption of correctness which accompanies the Workers' Compensation Court's findings.

> where the findings are based on conflicting evidence, this Court's function on review is confined to determining whether there is substantial credible evidence to support the findings, and not to determine whether there is substantial evidence to support contrary findings.

Davis v. Mountain West Farm Bureau Mutual Ins. Co. (Mont. 1985), 701 P.2d 351, 353, 42 St.Rep. 840, 843. The findings and conclusions will not be set aside unless they are clearly erroneous. Carlson v. Cain (Mont. 1985), 700 P.2d 607, 616, 42 St.Rep. 695, 705.

The depositions of two neurologists, Doctors Peterson and Nelson, were entered at claimant's hearing as medical evidence of the nature and extent of Currey's injury. This Court will not substitute its judgment for that of the Workers' Compensation Court concerning the credibility of witnesses nor the weight to be given their testimony except where critical medical evidence is entered by deposition. In cases where depositions are the evidence, "this court, although sitting in review, is in as good a position as the Workers' Compensation Court to judge the weight to be given such record testimony, as distinguished from oral testimony, where the trial court actually observes the character and demeanor of the witness on the stand." Shupert v. Anaconda

- 4 -

Aluminum Company (Mont. 1985), 696 P.2d 436, 439, 42 St.Rep. 277, 281-282 citing Hert v. J. J. Newberry Co. (1978), 178 Mont. 355, 360, 584 P.2d 656, 659.

An examination of the doctor's testimony as recorded by their depositions shows contradictory opinions with regard to the relationship between Currey's symptoms and the January 13, 1984 accident. Section 39-71-104, MCA, requires that liberal construction be given to the Workers' Compensation Act whenever interpreted by a court. This Court has repeatedly held that such liberal construction must be in favor of the claimant. 696 P.2d at 441. However,

> This rule of liberal construction does not relieve the Court of it's duty to carefully consider all of the evidence before determining whether the weight of the evidence presented supports the workers' claim.

Soelter v. Aetna Life & Casualty Co. (Mont. 1984), 683 P.2d 480, 483, 41 St.Rep. 1205, 1208.

Appellant argues that because the record shows that it was medically possible that the accident aggravated his pre-existing condition he is entitled to an award for permanent partial disability benefits. He cites Viets v. Sweet Grass Co. (1978), 178 Mont. 337, 583 P.2d 1070, in support of his argument. In Viets, we stated that "evidence of what is possible is more reliable in proving aggravation of an injury or disease than cause and effect . . . proof that it was medically possible for an industrial accident to aggravate a pre-existing condition is acceptable proof of disability." 583 P.2d at 1072. However, this evidence cannot be considered as if in a vacuum. The medical possibility that an industrial accident or injury aggravated a pre-existing condition "may together with other evidence, establish a compensable disability." (Emphasis added.) Bykonen v. Montana Power Co. (Mont. 1985), 703 P.2d 856, 858,

42 St.Rep. 1112, 1115. Liberal construction of the Act does not allow the Court to disregard some portions of the evidence before it. Soelter, 683 P.2d at 483. Claimant, Currey, still has the burden of proving his case by a preponderance of the evidence. Dumont v. Wickens (1979), 183 Mont. 190, 201, 598 P.2d 1099, 1105.

In Wheeler v. Carlson Transport (Mont. 1985), 704 P.2d 49, 53-54, 42 St.Rep. 1177, 1183, this Court stated that:

> expert testimony on medical possibilities is competent evidence admissible in a worker's compensation proceeding. It is the standard of evidence and does not affect claimant's ultimate burden to prove his case by a preponderance of the evidence. "Medical possibility" is to be weighed just as any other evidence; if supported by other, independent evidence it is "acceptable" to be used by the court in making its determination. Medical possibility evidence by itself, though, does not mandate the conclusion that the claimant has met his burden of proof under the Act.

The record shows and the Workers' Compensation Court found that with respect to this injury Currey was examined by a medical doctor, Dr. Peterson, in December, 1985, eleven months after the accident. Dr. Peterson diagnosed Currey's neurological disorder called syringomyelia. Dr. Peterson had Currey's lifetime medical records and testified that within a reasonable degree of medical certainty the January 13, 1984 accident did not worsen or affect Currey's condition. He felt that a more traumatic, crushing-type injury would be necessary to cause any sudden onset of syringomyelia or related symptoms.

Dr. Nelson, also a neurologist, examined Currey in July, 1985. He agreed with Dr. Peterson's diagnosis of syringomyelia. Dr. Nelson testified that due to Currey's spine's abnormal curvature and posture, it was more likely that he would sustain an injury. He believed that any degree

of trauma could aggravate Currey's disorder. Dr. Nelson agreed that it was impossible to determine the extent, if any, that the accident caused Currey's symptoms without pre-accident and post-accident studies. He admitted that he could not testify that the accident aggravated Currey's syringomyelia, that the condition naturally progresses and that at some point it would be expected that Currey begin to notice some symptoms.

Currey testified that he has always had difficulty lifting heavy objects but that he has had an increasing problem since the January 13, 1985 accident. The record shows that he did not notice any loss of heat and pain sensation in his right shoulder until October or November, 1985 when his right shoulder became less sensitive to heat. Currey worked at several jobs after the accident. The record reflects that he left none of these positions due to his physical problems until July, 1985, when Dr. Nelson advised him to stop lifting heavy objects. Dr. Peterson, on the other hand, testified that Currey's condition will not prevent him from working and that he doubts that it will result in any permanent disability.

Taken as a whole, the evidence presented in this case does not establish a preponderance of the evidence in favor of Currey's claim for temporary total disability benefits. The Workers' Compensation Court carefully considered all the evidence and concluded that the evidence did not prove that Currey's industrial injury either caused or aggravated his pre-existing syringomyelia and that defendant is therefore not liable to Currey for wage benefits due to this condition and related symptoms. We find that there is substantial credible evidence to support the Workers' Compensation Court's decision.

The second issue raised by appellant is whether the Workers' Compensation Court abused its discretion in denying appellant's motion for a rehearing for the purpose of admitting additional evidence.

Following the September 12, 1985 Workers' Compensation Court hearing, appellant was examined by a third neurologist, Dr. Cahill. This examination was done pursuant to a request made by defense counsel to a collateral civil action concerning the same accident as is the subject of Currey's present compensation claim. Currey argues that Dr. Cahill's medical report should be admitted as additional evidence in a rehearing.

The Workers' Compensation Court hearing examiner determined that the evidence presented at hearing was insufficient to prove Currey's claim for temporary total disability benefits. That decision will not be overturned as an abuse of discretion. No opinion is expressed on claimant's right to submit additional medical reports to the Division of Workers' Compensation requesting a determination of his medical condition based on the entire record, including the new evidence.

The decision of the Workers' Compensation Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

- 8 -

_____

_____
L. C. Gulbrandson,
             Justices