No. 88-476

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

VICKI BLACK BALLARD,

        Claimant and Appellant,

    -vs-

CLARK FORK VALLEY HOSPITAL,
        Employer,
    and
STATE COMPENSATION INSURANCE FUND,

        Defendant and Respondent.

APPEAL FROM:  The Workers' Compensation Court, The Honorable Timothy
                Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Milodragovich, Dale & Dye; Kristine L. Foot, Missoula,
        Montana

    For Respondent:

        Rebecca L. Smith, Agency Legal Services, Helena,
        Montana

Submitted on Briefs:  Dec. 9, 1988

Decided:    January 26, 1989

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Appellant Ballard appeals the judgment of the Workers' Compensation Court. The lower court held that Ballard suffered a compensable injury, but that Ballard's injury reached maximum healing a short time from the date it occurred. The lower court also held that no entitlement existed after Ballard reached maximum healing. Ballard appeals this decision.

Respondent, the State Compensation Insurance Fund (Fund), cross appeals contending that the lower court erred in finding the existence of a work injury. We affirm the lower court on both the appeal and the cross appeal.

The Clark Fork Valley Hospital in Plains, Montana, employed Ballard as a nurses aid. On January 12, 1981, Ballard injured her back catching and lifting a patient who was falling to the floor. At the time of the injury she knew that she had hurt her back, but she continued to work her regular hours through January 20, 1981.

On January 20, 1981, Ballard aggravated the back injury bending over to pick up an article of clothing while shopping. The severe pain from the aggravated injury led Ballard to consult Dr. Albertson. Dr. Albertson suspected a disk herniation, and prescribed six weeks bed rest. Approximately two weeks later Ballard told Albertson her back had improved and that she could return to work. Albertson released her to work, and noted that he may have been mistaken on his earlier diagnosis of disk herniation because Ballard had improved so quickly.

Ballard returned in early February with reduced hours. The record is unclear on whether Ballard or the Hospital requested the reduction in work time. Ballard contends on

appeal that the injury forced her to accept fewer hours on the job.

Ballard testified that at that time she returned to work the injury was improved but not completely healed. She also testified that the press of financial needs forced her back to work even though performance of her job duties caused pain. She continued her employment at the Hospital until 1984 when she quit in anticipation of the birth of her third child.

After the birth of her third child Ballard found employment at Benji's Restaurant, and at Dairy Queen. Ballard also gave birth to two other children prior to 1987. Ballard testified that her pregnancies never aggravated her allegedly continuing back problems.

On September 29, 1986, Ballard saw Dr. Wielenga complaining of severe back pain. Dr. Wielenga suspected Ballard suffered from nerve compression syndrome resulting from a herniated disk. The parties agree that available tests could confirm or refute the presence of a herniated disk, but that these tests have not been performed.

Resolution of Ballard's appeal hinges on conflicting evidence on the presence of a disabling condition from a work injury. Ballard's testimony supports a conclusion that the source of her 1986 back problems may be traced to the injury in 1981. Ballard testified that the injury never healed and that the pain never completely subsided, but that she endured the presence of her injury for lack of funds to seek a medical solution.

However, the Fund effectively argues that the circumstances and passage of time surrounding Ballard's injury and her return to work fail to support Ballard's version of events. For example, Ballard failed to seek any medical treatment for her back between 1981 and 1986. She

had two children in the interim, and continued her employment at the hospital. The Fund also pointed out that in January of 1981 Ballard filed a report on another back injury at work. When questioned on this incident, Ballard testified that she could not remember filing the injury report. The report conflicted with Ballard's testimony that the single injury to her back occurred in January of 1981.

The Fund also contends that the medical evidence supports the decision of the lower court. For example, Dr. Albertson testified on whether it was possible to connect the prior injury to Ballard's current condition as follows:

> Sometimes I think that is possible to do. In this case I don't think it is because we didn't see her enough to really document exactly what was wrong with her and where it was because she got well so quickly. So no x-rays were taken and she had no negative neurologic--or no positive neurologic findings or anything else to localize the disk area. If we had known she had hurt the L4-5 disk in the original area and we knew that she hurt the L4-5 disk later, you could probably make a correlation, but there's no way to know that in this case.

The judgment of the lower court summarized the medical and other evidence as follows:

> Since leaving Clark Fork Regional hospital in 1983, she [Ballard] has worked at Benji's [Restaurant] and Dairy Queen. She has also given birth to three children prior to her complaint of back pain to Dr. Wielenga on September 29, 1986. Because there were no x-rays taken or neurological tests performed in 1981, Dr. Albertson could not make a correlation between her 1986 condition and her 1981 injury. Because the claimant has the burden of proving her claim by a preponderance of the credible evidence, the Court finds that the claimant did not carry that burden and failed to relate any future wage loss after she returned to work February 4, 1981.

4

Ballard contends the finding that she failed to carry the burden in showing a causal connection ignores other medical testimony. For example, Ballard contends that Dr. Wielenga's diagnosis provided the necessary evidence of causation. Wielenga concluded that:

> [I]t is a reasonable possibility that her acute back problems of five years ago, which are similar to those she is now experiencing, could have resulted from the lifting of the patient at the hospital. It is, indeed, possible that the lifting of the patient with the associated tingling into her leg may have caused a weakening of her disk. This may have resulted, a few days later [while shopping], in a more complete herniation with minimal stress placed on the back and the resulting acute symptoms of nerve compression that were seen on her exam of January 21, 1981.

Ballard contends that Dr. Wielenga's statement and Albertson's 1981 diagnosis provide evidence sufficient to demonstrate that her 1981 injury more probably than not set in motion a continuous and progressively deteriorating condition leading to her disability in 1986. We disagree.

Dr. Wielenga qualified his opinion on the possibility of a connection between the conditions as follows:

> This is a reasonable medical possibility, although I cannot make a definite statement as to whether this actually occurred in Vicki's case since I was not at all a part of her initial evaluation.

And Albertson, the physician conducting the initial examination, holds the opinion that it is impossible to connect Ballard's condition in 1986 with her injury in 1981. Given the fact that Albertson participated in the initial evaluation and Wielenga did not, the lower court was

justified in finding Albertson's opinion more probative than Wielenga's opinion.

Ballard also argues that the Fund failed to carry the burden of showing that an intervening cause resulted in Ballard's 1986 impairment citing Gaffney v. Industrial Accident Board (1955), 129 Mont. 394, 404, 287 P.2d 256, 261. However, in Gaffney, the only "sworn testimony before the Board, from which a rational finding can be made, is that the injury received by claimant was a contributing cause of his present total and permanent disability." Gaffney, 287 P.2d at 261. Here, the medical evidence and the lapse of time during which Ballard continued her employment at the hospital provide evidence to make a rational finding that the injury did not contribute to her condition in 1986.

We also agree with the Fund that the facts and law in Brown v. Ament (Mont. 1988), 752 P.2d 171, 45 St.Rep. 508, and Currey v. 10 Minute Lube (Mont. 1987), 736 P.2d 113, 44 St.Rep. 790, more closely control this case than Gaffney. In Brown the claimant failed to carry the burden of showing a causal connection because:

> The medical evidence is inconclusive and, at best, establishes only a possibility of a causal link. As noted by the Workers' Compensation Court, this is a difficult case to chart and "too much time has passed without explanation and without a tracing of the injury through that time." Following December 1, 1978, claimant did not seek any medical attention for his back for approximately three and one-half years. The evidence presented fails to sufficiently demonstrate that treatment rendered after that period was a direct result of the injury received in 1978 . . .

Brown, 752 P.2d at 175. In Currey this Court stated:

6

> "Medical possibility" is to be weighed just as any other evidence; if supported by other independent evidence it is "acceptable" to be used by the court in making its determination. Medical possibility evidence by itself, though, does not mandate the conclusion that the claimant has met his burden of proof under the Act.

Currey, 736 P.2d at 116 (quoting Wheeler v. Carlson Transport (Mont. 1985), 704 P.2d 49, 53-54, 42 St.Rep. 1177, 1183). Ballard fails to distinguish Currey and Brown.

Ballard argues further that the lower court erred in relying on Stangler v. Anderson Meyers Drilling Co. (Mont. 1987), 746 P.2d 99, 44 St.Rep. 1944. In Stangler evidence that the claimant had returned to strenuous labor supported a finding that the injury had reached maximum healing. Stangler, 746 P.2d at 102. According to Ballard, the lower court misinterpreted Stangler by holding that the work release given by Albertson to Ballard established the end of the healing period. We agree that situations exist where the Workers' Compensation Court properly finds that claimants have returned to work prior to maximum healing of their injury. Tenderholt v. Travel Lodge Int'l. (Mont. 1985), 709 P.2d 1011, 42 St.Rep. 1792. And that Stangler should not be interpreted to mean that a work release settles the maximum healing issue. However, here the lower court focused on evidence in addition to the release.

Finally, Ballard argues that equity prevents a finding that she failed to prove her case. According to Ballard, because of the Fund's initial denial of her claim she lacked medical benefits to make affordable the necessary testing to confirm the presence of a herniated disk. Her brief states, "Vicki should not be required to satisfy her burden of proof by presenting medical evidence of equal weight to the tests the defendant denied her."

The claimant bears the initial liability for medical expenses. Section 39-71-704, MCA; ARM § 24.29.1401. Section 39-71-2907, MCA, authorizes assessment of penalties on insurers who unreasonably deny benefits. Thus, under the Montana Workers' Compensation Act no issue exists on the failure of the Fund to provide tests to diagnose Ballard's condition.

The Fund's position on cross appeal concedes that medical testimony demonstrates a possibility that a work injury occurred. However, the Fund contends that the lower court erred in holding that Ballard carried her burden of demonstrating an entitlement to temporary total disability benefits from January 21, 1981, to February 4, 1981.

The record amply supports the lower court's decision on this issue. Ballard testified that the back strain she suffered at work caused her to consult Dr. Albertson. Dr. Albertson prescribed six weeks bed rest. Ballard missed work during the period the lower court found entitled her to temporary total disability benefits. This evidence sufficiently supports the lower court's decision that an injury occurred. AFFIRMED.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices

8