No. 89-426

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

———————————————————————————

JOE O'BRIEN,

Claimant and Respondent,

-vs-

CENTRAL FEEDS, Employer, and GUARANTY
FUND SERVICES,

Insurer and Appellant,

and

GRAHAM STAUNTON, Employer, and UNIVERSAL
UNDERWRITERS INSURANCE COMPANY,

Insurer and Respondent,

and

SUN ICE COMPANY, Employer, and STATE
COMPENSATION INSURANCE FUND,

Insurer and Respondent.

———————————————————————————

APPEAL FROM:  The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Charles E. McNeil; Garlington Lohn & Robinson, (Western
Guaranty), Missoula, Montana

For Respondent:

Terry G. Spear; Matovich, Addy & Keller,(State Compensation),
Billings, Montana
Patrick R. Sheehy; Halverson, Sheehy & Plath, (O'Brien)
Billings, Montana
Michael P. Heringer; Anderson, Brown Law Firm, (Universal
Underwriters), Billings, Montana

———————————————————————————

Submitted on Briefs: Dec. 14, 1989

Decided: February 6, 1990

Filed: '90 FEB 6 AM 11 03

FILED FEB 6 AM 11 03

ED SMITH, CLERK
MONTANA SUPREME COURT

_____
                Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Central Feeds and Western Guaranty Fund Services, defendants and appellants, appeal from an award by the Workers' Compensation Court that found Western Guaranty liable for temporary total disability benefits from June of 1986 and permanent partial disability benefits for 500 weeks at $81 per week. Western Guaranty was ordered to indemnify the State Compensation Insurance Fund for temporary total disability benefits paid since June of 1986. We affirm the Workers' Compensation Court and remand for a determination of attorney fees.

The issue raised on appeal is whether substantial credible evidence supported the Workers' Compensation Court's findings of fact and conclusions of law.

On September 17, 1976, claimant injured his back lifting a 50-pound sack of feed while in the course and scope of employment with Central Feeds, whose carrier at that time was Montana Insurer's Guaranty Fund, the predecessor to defendant, Western Guaranty. Claimant underwent surgery the following month for the removal of his L-5 disc. In December of the same year, claimant suffered another injury that required further surgery in January of 1977. During the surgery, a second disc protrusion at the L-4 level was removed. Western Guaranty accepted liability and paid medical benefits for the two surgeries, temporary total disability benefits from September 23, 1976, through April 20, 1977, and 50 weeks of permanent partial disability benefits. No further permanent partial disability benefits have been paid by Western Guaranty. Dr. Robert Wood, claimant's surgeon, released claimant to work in April of 1977.

Claimant was then employed by Graham Staunton, insured by Universal Underwriters Insurance Company. He was twice injured while in the course and scope of employment with Graham Staunton-

-once on August 11, 1977, while getting off a "creeper," and once on September 6, 1977, while helping to lift a camper shell onto a pickup truck. Universal Underwriters accepted liability on claims submitted and paid medical benefits to claimant's doctor in 1977. No further medical benefits nor wage benefits were paid by Universal Underwriters as a result of these two accidents.

In the summer of 1985, claimant was employed by Sun Ice Company, insured by the State Fund. On July 4, 1985, claimant drank heavily until he passed out the next morning at 3:00 a.m. At approximately 7:00 a.m. on July 5, 1985, he reported to work and made deliveries for Sun Ice in a company truck along a 281 mile route to the final stop, Ballatine, Montana. Claimant started his return trip by taking a frontage road that ran parallel to his designated route. Approximately three miles east of Worden, Montana, claimant overturned his vehicle. He was charged and pled guilty to driving under the influence of alcohol.

Claimant filed a Workers' Compensation claim on the July 5, 1985 accident. The State Fund, as Sun Ice's insurer, denied all liability for the claim and no medical or wage benefits have been paid on the claim. The State Fund has, however, paid temporary total disability payments of $127.79 per week since August 17, 1988, under a reservation of rights.

Claimant filed a petition with the Workers' Compensation Court to resolve a dispute between himself and Central Feeds/Western Guaranty, Graham Straunton/Universal Underwriters and Sun Ice/State Fund under § 39-71-29, MCA. A pretrial conference was conducted on January 12, 1989, before a Workers' Compensation Court Hearing Examiner. The various motions of the parties were docketed in the pretrial order on February 15, 1989. A trial was conducted on February 15 and 16, 1989, before the Workers' Compensation Court. Evidence included testimony of the claimant and four witness, nine exhibits, the deposition testimony of the claimant and his physicians, Dr. Robert Wood, a certified neurological surgeon, and Dr. William Shaw, a specialist in internal and occupational medicine.

3

Dr. Wood, who operated on claimant's back in 1976, 1977 and 1988, and who examined claimant in March of 1979 and December of 1984, testified that he believed claimant was likely suffering from progressive scarring. Dr. Wood further testified that, while he released claimant to return to work in April of 1977, he did not issue an impairment rating at that time nor did he render an opinion on whether claimant had reached maximum healing. In fact, Dr. Wood testified that maximum healing would normally be reached in approximately six months after surgery. However, in this case, since claimant was prone to developing scar tissue, Dr. Wood stated that his opinion on impairment and a healing period would necessarily be delayed even longer. Dr. Wood testified, that the medical evidence of injuries sustained after claimant's employment with Graham Staunton would merely indicate the possibility of an aggravation of the developing scar tissue in its early stages.

Dr. Wood also examined claimant August 1, 1985, less than one month after the Sun Ice accident, and testified that, while it was possible the July 5, 1985 accident aggravated his previous condition, he did not feel that the accident had a major permanent effect on claimant's back condition and that, while claimant had pulled some lumbar muscles, there was no evident exacerbation of scar tissue signs.

At the request of Dr. Wood, Dr. Shaw, examined claimant on January 3, 1989. Dr. Shaw testified that:

> [I]t is safe to say that if [claimant] had never had surgery in 1976, that it would be far less likely that he would be in the situation that he finds himself now in.

Dr. Shaw testified that, while it is possible that a number of events could have aggravated claimant's condition between April of 1977 and January of 1989, there was no event that he could attribute the causal relationship to claimant's present condition with the same degree of medical certainty that he could attribute claimant's original injury and surgeries to his present condition.

4

He stated that claimant's original injuries were more likely than not related to his present condition.

On July 12, 1989, the Workers' Compensation Court entered its findings of fact and conclusions of law and judgment. In its judgment, the court's order included that: (1) The State Fund is liable for medical benefits for costs incurred as a direct result of the July 5, 1989 accident but is not liable for wage loss benefits and is to be indemnified by Western Guaranty for the temporary total disability benefits it paid; (2) Universal Underwriters is not liable for paying claimant any Workers' Compensation benefits; (3) Western Guaranty is liable for claimant's Workers' Compensation benefits to include temporary total disability benefits from June of 1986 and permanent partial disability benefits in the amount of $81 per week for 500 weeks; Western Guaranty must indemnify the State Fund for temporary total disability benefits paid since June of 1986; Western Guaranty is liable for medical costs relating to treatment of claimant's spinal condition; and Western Guaranty is entitled to a $4,050 credit plus the amount of credit of benefits offset for social security; (4) claimant is entitled to an award of reasonable costs and attorney fees pursuant to § 39-71-611, MCA.

From the judgment, Western Guaranty appeals. The parties have reserved the determination of attorney fees.

Decisions of the Workers' Compensation Court must be based on substantial credible evidence. Snyder v. San Francisco Feed & Grain (1987), 230 Mont. 16, 25, 748 P.2d 924, 929. This Court's function

5

upon review of the Workers' Compensation Court is to determine whether evidence exists to support the court's findings of fact and conclusions of law. Hartman v. Staley Continental (Mont. 1989), 768 P.2d 1380, 1384, 46 St.Rep. 248, 253. Nevertheless, this Court does not determine whether there is sufficient evidence to support contrary findings. Davis v. Jones (1985), 216 Mont. 300, 303, 701 P.2d 351, 353.

For a subsequent insurer to be liable for claimant's injuries, claimant must have been injured during subsequent employment after having reached maximum healing from his previous injury. Belton v. Carlson Transport (1983), 202 Mont. 384, 658 P.2d 405. As stated in Belton, 658 P.2d at 408:

> "[M]aximum healing". . . has a meaning to a doctor who must give an opinion as to whether a point has been reached to constitute the end of a healing period.

The insurer seeking to avoid payment has the burden of proving that the claimant's present condition was caused by an accident occurring when another insurer was at risk. Little v. Structural Systems (Mont. 1980), 614 P.2d 516, 37 St.Rep. 1187 (overruled on other grounds in Belton, 658 P.2d at 408.).

Here, the court found that there was no conclusive evidence that claimant had reached maximum healing prior to his employment with Graham Staunton and Sun Ice. The court based its findings on the testimony of Dr. Wood and Dr. Shaw. Dr. Wood testified that, while it was possible the July 5, 1985 accident aggravated claimant's previous condition caused by his September 17, 1976 accident, he did not feel that it had a permanent effect on the

6

claimant's condition. He further stated that there was no evident exacerbation of scar tissue from earlier surgeries. Also, Dr. Shaw testified that, while it was possible that a number of events could have aggravated claimant's condition, he could not single out any one event with the same degree of medical certainty that he could attribute claimant's original injury and surgeries to his present condition. In Wheeler v. Carlson Transport (1985), 217 Mont. 254, 261, 704 P.2d 49, 53-54, this Court stated:

> "Medical possibility" is to be weighed just as any other evidence; if supported by other, independent evidence it is "acceptable" to be used by the court in making its determination. Medical possibility evidence by itself, though, does not mandate a conclusion that [Western Guaranty] has met [the] burden of proof under the Act. (Parenthetical inserts supplied.)

See also Currey v. 10 Minute Lube (1987), 226 Mont. 445, 736 P.2d 113. Here, as in Wheeler, we cannot conclude that medical possibility is sufficient evidence, absent additional persuasive evidence, that Western Guaranty has met is burden in proving that claimant reach maximum healing prior to his subsequent employments.

Western Guaranty, however, argues that because Dr. Wood had released claimant to work in April of 1977--subsequent to his employment with Central Feeds and prior to his employment with Graham Staunton and Sun Ice--such constituted evidence of maximum healing. While a work release may be considered when making a determination of maximum healing, it does not, in and of itself, resolve the issue of maximum healing. See Ballard v. Clark Fork Valley Hospital (Mont. 1989), 767 P.2d 1327, 46 St.Rep. 128. Certainly, a claimant may be released to work prior to maximum healing of his injury. See Tenderholt v. Travel Lodge Int'l. (1985), 218 Mont. 523, 709 P.2d 1011.

In this case, Dr. Wood testified that, while he did release claimant to work in April of 1977, he did not, at that time, issue an impairment rating nor an opinion as to maximum healing. In

fact, he testified that in such a case, maximum healing would not be achieved until six months after surgery and, since claimant was prone to developing scar tissue, even longer. Because of this testimony, we find Western Guaranty's contention unpersuasive.

Affirmed and remanded for a determination of attorney fees.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices

8